**BEACON OIL COMPANY**

v.

**The UNITED STATES.**

No. 562–84C.

United States Claims Court.

Sept. 18, 1985.

David G. Wilson, Washington, D.C., attorney of record for plaintiff. Corcoran, Hardesty, Whyte, Hemphill & Ligon, Washington, D.C., of counsel.

Genevieve Holm, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., attorney of record for defendant.

## OPINION

LYDON, Judge:

In this contract case plaintiff challenges a decision by the Department of Energy Board of Contract Appeals (EBCA) dismissing plaintiff's claims for refunds on payments it made for oil it purchased from the government. The Board's dismissal of plaintiff's claims was based on the holding that the claims were untimely in that they were made after performance under the contracts had been completed and final payments relative thereto had been made. *Beacon Oil Company*, EBCA Nos. 215-6-82 and 216-6-82, 84-2 BCA, ¶ 17,279 (1983). Defendant has moved to dismiss plaintiff's complaint on jurisdictional grounds. In the alternative, defendant has cross-moved for summary judgment contending that the EBCA decision meets Wunderlich Act Review standards and is otherwise legally correct. Plaintiff has moved for summary judgment asserting that the EBCA decision is erroneous as a matter of law. For reasons which follow, the court concludes that it lacks jurisdiction over plaintiff's claims and thus defendant's motion to dismiss must be granted. As a result, it is not necessary for the court to rule on the parties' motions for summary judgment.

### I.

On February 14, 1978, plaintiff and defendant, acting through the United States Department of Energy (DOE), entered into a contract (No. EL-78-01-7159) (hereinafter "1978 contract") whereby plaintiff purchased crude oil from DOE. The contract price was $29,575,950. The contract covered the period February 15, 1978 through February 1, 1979 and the crude oil in question was to come from the Elk Hills Naval Petroleum Reserve (NPR-1). The contract stated, in pertinent part, that: "For Crude Oil delivered by the Government to a Purchaser hereunder, Purchaser shall pay the crude base price in effect on the date of delivery plus any amount specified as a bonus (or minus any amount specified as a discount) in Section E-1 above." The contract, in pertinent part, defined the "crude base price" for Shallow Zone Crude Oil as follows:

> [T]he highest posted stripper well oil price per barrel of all the prices which are regularly posted or published by the principal purchaser of Crude Oil from the Elk Hills, Buena Vista Hills, Midway-Sunset and Lost Hills Oil Fields located in the San Joaquin Valley of California for crude oil of like quality and API gravity.

In the month of May 1978, plaintiff purchased 98,634.15 barrels of Shallow Zone Crude Oil. Thereafter, DOE invoiced plaintiff for this purchase, and plaintiff paid this invoice. On June 30, 1978, DOE sent plaintiff a supplemental invoice increasing the prices of Shallow Zone Crude Oil purchased by plaintiff in May 1978 by $34,237.14. Plaintiff paid this supplemental invoice by check dated July 14, 1978.[1]

Effective January 31, 1979, plaintiff and DOE entered into another contract (No. OE–SC01–79RA–32028) (hereinafter "1979 contract") whereby plaintiff purchased crude oil from DOE. The contract price was $29,650,410. The contract covered the period February 1, 1979 through February 1, 1980. The pertinent provisions of the 1978 contract, cited *supra*, were also contained in the 1979 contract. In addition to Shallow Zone Crude Oil, plaintiff's claim as to the 1979 contract also involved Stevens Zone Crude Oil. The pertinent 1979 contract provisions defined "crude base price" for Stevens Zone Crude Oil as follows:

[T]he highest posted stripper well oil price per barrel of all the prices which are posted or published by the purchaser of Crude Oil from the Asphalto, Elk Hills, Greeley, Rio Bravo, Paloma, and Coles Levee Oil Fields in the San Joaquin Valley of California for Crude Oil of like quality and API gravity.

In the month of November 1979, plaintiff purchased 98,257.28 barrels of Shallow Zone Crude Oil and 85,866.66 barrels of Stevens Zone Crude Oil. Thereafter, DOE invoiced plaintiff for these purchases, and plaintiff paid these invoices. On December 13, 1979, DOE sent plaintiff supplemental invoices increasing the prices of Shallow Zone Crude Oil and Stevens Zone Crude Oil purchased by plaintiff in November 1979 by $1,296,937.80. Plaintiff paid these supplemental invoices by wire transfer on December 21, 1979.[2]

On March 30, 1982, plaintiff filed two claims with the DOE contracting officer, pursuant to the Disputes Clause of the contract seeking refunds of the $34,237.14 it paid in July 1978, and the $1,296,937.80 it paid in December 1979, on the ground that the pertinent prices in the ARCO Bulletin Nos. 12C and 25C (*see supra* note 1) utilized by DOE in its June 30, 1978 and December 13, 1979 supplemental invoices were not valid "crude base prices" under the 1978 contract. Plaintiff claimed it was unaware of the invalidity of the "crude base price" used in preparing the supplemental invoices until March 1982 when it became aware of the decision in *Powerline Oil Company*, EBCA No. 278–2–83, et al., 81–2 BCA, ¶ 15,430 (Oct. 20, 1981), *reconsideration denied*, 82–1 BCA, ¶ 15,632 (Feb. 5, 1982).[3]

The DOE contracting officer denied plaintiff's claims on May 5, 1982. Plaintiff appealed this denial, under the Contract Disputes Act of 1978, 41 U.S.C. § 606, to the EBCA which dismissed the appeal on November 4, 1983, as indicated earlier. Plaintiff filed its complaint in this court on November 1, 1984 challenging the EBCA dismissal action. Count I of the complaint

---

1. Effective May 1, 1978, ARCO Petroleum Products Company (ARCO), a division of Atlantic-Richfield Corporation, published, on May 26, 1979, Crude Oil Price Bulletin No. 12C which listed prices it was willing to pay for crude oil from the Buena Vista Oil Field. The publication of these prices by ARCO, which DOE deemed to be a principal purchaser of crude oil within the terms of the contract, triggered the issuance of the supplemental invoice on June 30, 1978.

2. Effective on November 30, 1979, ARCO published, on that date, Crude Oil Price Bulletin No. 25C which listed prices it was willing to pay for crude oil from the Midway-Sunset and Coles-

Levee Oil Fields. The publication of these prices by ARCO, which DOE deemed to be a principal purchaser of crude oil within the terms of the contract, triggered the issuance of the supplemental invoices on December 13, 1979.

3. In the *Powerline Oil Company* case, the EBCA held that ARCO was not a "principal purchaser" within the meaning of the contract, and thus its published prices should not have been used in establishing the contract's "crude base price". The retroactive effective date of the posted oil prices was not a primary factor in the *Powerline Oil Company* case, nor have the parties made it an issue in this case.

related to the 1978 contract, and Count II of the complaint related to the 1979 contract.

## II.

Initially it is to be noted that both contracts were entered into before the effective date of the Contract Disputes Act.[4] However, section 16 of the Act provided that, with respect to any contract made before the effective date of the Act, a contractor could elect to proceed under the Act with reference to any claim initiated after the effective date of the Act. *See Monroe M. Tapper & Associates v. United States,* 222 Ct.Cl. 34, 38, 611 F.2d 354, 357 (1979).

Plaintiff filed uncertified claims with the contracting officer on March 30, 1982. These claims were denied by the contracting officer as being untimely. Plaintiff appealed the contracting officer's denial of its claims to the EBCA pursuant to "section 7 of the Contract Disputes Act of 1978, 41 U.S.C. § 606." On December 17, 1982, the EBCA dismissed, without prejudice, plaintiff's appeals on the ground the claims had not been properly certified in accordance with the Contract Disputes Act, and therefore the Board lacked jurisdiction over the appeal. Plaintiff thereafter moved that the Board vacate its prior dismissal judgment and permit it to amend its complaint so as to proceed under the Disputes Clauses of its contracts. Over the government's objections, the Board granted plaintiff's motion and the complaints were amended. The EBCA thereafter denied the claims on the merits.

Defendant contends that plaintiff elected to proceed under the Contract Disputes Act when it filed its appeal with the Board and that subsequent Board action which al-

lowed plaintiff to proceed under the Disputes Clauses of the contracts could not vitiate the prior election by plaintiff.[5]

The critical question on the jurisdictional issue before the court is whether plaintiff's election to proceed under the Contract Disputes Act before the Board should be deemed binding on it. Case law suggests that such an election, on the facts of this case, should be considered binding on plaintiff and the Board.

■ In *W.M. Schlosser Co. v. United States,* 705 F.2d 1336 (Fed.Cir.1983), the Federal Circuit set forth the binding nature of an election to proceed under the Contract Disputes Act. The Federal Circuit held that, "[o]nce the Act is applicable, it 'control[s]' all avenues of appeal available to the plaintiff.'" *Id.* 705 F.2d 1340. (*citing Skelly & Loy v. United States,* 231 Ct.Cl. 370, 376, 685 F.2d 414, 418 (1982)). Here, the Act became applicable when plaintiff made a conscious election to proceed under the Contract Disputes Act. There is no indication that plaintiff was misled or was uninformed relative to its right to elect to proceed under the Act or under the Disputes Clauses of its contracts. *Cf. National Electric Coil v. United States,* 227 Ct.Cl. 595 (1981). Since plaintiff made a conscious election to proceed under the Contract Disputes Act it is foreclosed from later electing to proceed under the Disputes Clauses of its contracts. *Essex Electro Engineers, Inc. v. United States,* 702 F.2d 998 (Fed.Cir.1983). *Tuttle/White Constructors, Inc. v. United States,* 228 Ct.Cl. 354, 360, 656 F.2d 644, 647–48 (1981).

■ The fact that the 1979 contract claim was not certified, and thus deprived

---

**4.** The Contract Disputes Act was effective with respect to contracts entered into 120 days after November 1, 1978. Accordingly, the Act had an effective date of March 1, 1979. *See Monroe M. Tapper & Associates v. United States,* 222 Ct.Cl. 34, 38, 611 F.2d 354, 357 (1979).

**5.** By holding plaintiff to its election to proceed under the Contract Disputes Act (CDA), defendant maintains this court lacks jurisdiction over

the present action because plaintiff did not certify the 1979 contract claim ($1,296,937.80), which required certification, and, while the 1978 contract claim did not require certification ($34,237.14), appeal of a Board decision brought under the CDA lies with the Court of Appeals for the Federal Circuit, under 41 U.S.C. § 607(g)(1) (1982) and 28 U.S.C. § 1295(a)(10) (1982), and not with this court.

the EBCA of jurisdiction over that claim, does not effect the binding nature of plaintiff's election. In this regard, the Federal Circuit in *W.M. Schlosser Co. v. United States, supra,* stated:

> We see no reason why the appellant's decision to proceed under the Act should be any less binding. Although the lack of certification taints all proceedings brought under the Act, as noted above, it does not nullify the appellant's election to proceed under the Act. The Act became applicable as a result of the appellant's voluntary election to proceed under it, and it is immaterial that when it made that election the appellant's claim that it sought to appeal to the Board was fatally defective for want of certification. [*Id.* 705 F.2d at 1340]

■ Moreover, the fact that the EBCA permitted plaintiff to amend its initial complaint, in which plaintiff originally elected to proceed under the Contract Disputes Act, so that plaintiff was able to change its election and subsequently proceed under the Disputes Clauses of its contracts is unavailing relative to the binding nature of an election under the Act. As the EBCA cannot waive the certification requirement of the Act, neither can it manipulate the election requirement of the Act. *Id.* 705 F.2d at 1338. The binding effect of an election to proceed should be enforced to preclude the uncertainties that surely will arise if such an election is subjected to the whims of the parties and the Boards. It would improperly permit contractors unilat-

erally to establish their own rules of procedure in cases covered by the Contract Disputes Act. *See Tuttle/White Constructors, Inc. v. United States, supra,* 228 Ct.Cl. at 360, 656 F.2d at 648.

Having elected to proceed under the Contract Disputes Act, plaintiff must abide by the requirements and avenues of appeal associated therewith. It is clear, as to the 1979 contract claim of $1,296,937.80, that plaintiff did not comply with the certification requirements of the Act. Accordingly, that claim is subject to dismissal for lack of jurisdiction whether the appeal be before the Federal Circuit or this court. Such a dismissal would be without prejudice. If plaintiff thereafter wishes to pursue that claim under the Act it must follow the procedures outlined in *W.M. Schlosser Co. v. United States, supra,* 705 F.2d at 1340. *See also United States v. Hamilton Enterprises, Inc.,* 711 F.2d 1038, 1043 n. 3 (Fed. Cir.1983).[6]

■ As to the 1978 contract claim of $34,237.14, such a claim need not be certified under the Contract Disputes Act.[7] Accordingly, the EBCA decision on this claim was proper. Since the Board could properly decide this claim on the merits under either the Contract Disputes Act or the Disputes Clause of the contract, the Board's erroneous designation of this claim as a Disputes Clause claim rather than a Contract Disputes Act claim is, at best, harmless error. However, appeal procedures from the EBCA determination are affected by the legal basis for the EBCA's

---

**6.** Defendant suggests that plaintiff's 1979 contract claim, relative to these procedures, may be barred by the statute of limitations, citing *Zinger Construction Co. v. United States,* 231 Ct.Cl. 926 (1982). The court need not, and does not, deal with this dire observation.

**7.** It is interesting to note that before the EBCA, the government sought to bifurcate out and separately consider the 1978 contract claim and the 1979 contract claim because the 1978 contract claim was under $50,000 and need not be certified and the 1979 claim was over $50,000 and thus required certification. Plaintiff, however, objected to the government's bifurcation motion. The EBCA denied this motion on the ground "such action would unduly complicate the consideration of these two, but similar claims." Plaintiff now argues that the addition

of interest to the $34,237.14 claim would bring this claim total above $50,000. Thus, since this claim was not certified, plaintiff argues it should now be treated as the 1979 claim is treated, *i.e.,* dismissal herein without prejudice and resubmission by plaintiff to the contracting officer as a certified claim. The court makes no ruling on this possible scenario since it believes the matter is one for initial administrative consideration under the circumstances. However, the court is of the view that the EBCA was not without jurisdiction of the 1978 claim so its decision on that claim was not a nullity. Plaintiff, however, is not precluded from moving the EBCA to vacate its decision on the 1978 claim. The court shall not do so under the circumstances.

jurisdiction over the claim. As discussed earlier, plaintiff's election to proceed under the Contract Disputes Act controls all avenues of appeal available to plaintiff. *W.M. Schlosser Co. v. United States, supra,* 705 F.2d at 1340. Under 28 U.S.C. § 1295(a)(10), an appeal from a final decision of an agency board of contract appeals lies with the United States Court of Appeals for the Federal Circuit. Accordingly this court is also without jurisdiction of plaintiff's 1978 contract claim appeal.[8]

### III.

In light of the above discussion and conclusion that this court lacks jurisdiction over plaintiff's claims, it is ordered that plaintiff's complaint be dismissed without prejudice.[9]

---

**8.** It would not be appropriate to transfer this claim to the Federal Circuit under 28 U.S.C. § 1631. Under the Contract Disputes Act, 41 U.S.C. § 607(g)1(A), a contractor may appeal an agency board decision to the Federal Circuit within 120 days after the date of receipt of a copy of said decision. In this case, the EBCA decision was rendered on November 4, 1983. Plaintiff's complaint was filed in this court on November 1, 1984. While not disclosed in the materials at hand, it is reasonable to conclude that plaintiff received the EBCA's decision long before August 1984. Accordingly, plaintiff's appeal under the Contract Disputes Act was not docketed, for purposes of jurisdiction in the Federal Circuit within the 120-day period provided by the Act. *See Placeway Construction Corp. v. United States,* 713 F.2d 726, 727–28 (Fed.Cir.1983). As a result, transfer of the 1978

contract claim to the Federal Circuit would be futile because the appeal could not have been filed in the Federal Circuit at the time plaintiff filed its complaint in this court. *See W.M. Schlosser Co., Inc. v. United States, supra,* 705 F.2d at 1339.

**9.** Plaintiff in its response to defendant's motion to dismiss advises it does not contest defendant's motion to dismiss. However, plaintiff moves the court to vacate the Board decisions "that are null and void due to lack of jurisdiction." Plaintiff also moves the court alternatively to remand Count I of its complaint to the EBCA. Since the court lacks jurisdiction over plaintiff's claims, both of these motions must be, and are, denied under the circumstances.