**MARK SMITH CONSTRUCTION CO., INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 415–84C.

United States Claims Court.

July 31, 1986.

Mark A. Smith, III, Atlanta, Ga., for plaintiff.

Lynn J. Bush, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

### I. *Preliminary Matters*

■ This case is before the court on Defendant's Motion for Summary Judgment and plaintiff's opposition thereto. The premise of defendant's motion is that this court lacks jurisdiction to hear this case. Because of that assertion, *i.e.,* the dispositive issues are jurisdictional, we believe that this case must be resolved by appropriately treating defendant's summary judgment motion (RUSCC 56) as one pursuant to RUSCC 12(b)(1), *i.e.,* a motion to dismiss for lack of subject matter jurisdiction. Lack of subject matter jurisdiction

is a matter in abatement and, when a court dismisses a case on that ground, it should not also adjudicate the merits of the case. On the other hand, the granting of a motion for summary judgment is a disposition on the merits of the case, and therefore, results technically in a judgment in bar of plaintiff's claim. 6 J. Moore, Moore's Federal Practice ¶ 56.03 (2d ed. 1986). *Stanley v. Central Intelligence Agency,* 639 F.2d 1146, 1157 (5th Cir.1981); *Fidelity and Deposit Co. of Md. v. United States,* 2 Cl.Ct. 137 (1983).[1]

### II. *Statement of the Case*

■ In this five count government contract case, Mark Smith Construction Co. seeks $108,000 in construction related equitable adjustments, an unspecified amount of interest on a withheld payment, and the refund of some $8,000 in retainage previously applied by the contracting officer toward the payment of the wages of one of plaintiff's subcontractors as required under the Davis-Bacon Act. These claims arise out of a contract (# J131c–347) entered into on January 24, 1983, between plaintiff and the Bureau of Prisons, Department of Justice (BOP), for the renovation of the third floor of the U.S. Penitentiary in Atlanta, Georgia. Plaintiff alleges that its claims, all counts, are properly here pursuant to the direct access provision of the Contract Disputes Act (CDA), 41 U.S.C. §§ 601–613 (1982). We have concluded, in view of the defendant's position, that the dispositive jurisdictional issue, as to Counts I–III and V, is whether plaintiff is properly here pursuant to a valid election under 41 U.S.C.

---

1. In a factual attack on jurisdiction, we are not required to, and thus do not, consider plaintiff's allegations as true for purposes of the defendant's motion as would be in the case of a motion for summary judgment. *Cf. Mortensen v. First Federal Savings and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977); *Williamson v. Tucker,* 645 F.2d 404 (5th Cir.1981). Rather, we are obliged to look beyond the pleadings and decide *for ourselves* those facts, even if in dispute, which are necessary for a determination of the jurisdictional merits of defendant's motion. We are constrained to so proceed because "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Cf. Mortensen,* 549 F.2d at 891; *Williamson,* 645 F.2d at 404; *DeLancie v. Birr, Wilson & Co.,* 648 F.2d 1255, 1258 n. 3 (9th Cir.1981); *Eaton v. Dorchester Development, Inc.,* 692 F.2d 727 (11th Cir.1982); *Exchange National Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126 (2d Cir.1976); *Prakash v. American University, et al.,* 727 F.2d 1174, 1179 (D.C.Cir.1984); *Grafon Corp. v. Hausermann,* 602 F.2d 781 (7th Cir.1979). *See also McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 185, 189, 56 S.Ct. 780, 783, 785, 80 L.Ed. 1135 (1936).

§ 609, and as to Count IV, whether plaintiff has exhausted its administrative remedies.

> This focus is critical because—
>
> [w]ith the passage of the Contract Disputes Act, a new era in the resolution of Government contracts emerged. One of its most significant reforms was to present an alternative to the administrative appeal in contract disputes. Under the new law, which applies to all contracts entered into on or after March 1, 1979, a contractor either can appeal an adverse final decision [of a contracting officer] to the appropriate board of contract appeals or seek relief from the contracting officer's decision directly in this court. Given the fundamental differences between the two forums, the contractor thus must make an important initial strategic decision; namely, which forum would be better suited to hear its particular claims.

*Tuttle/White Constructors, Inc. v. United States*, 656 F.2d 644, 646 (Ct.Cl.1981) (footnotes omitted). Once the Act is applicable, as here, it controls all avenues of appeal available to the plaintiff. Consequently, a contractor's prime concern must be to proceed properly under the Act. In these circumstances, it would be required to make an irrevocable forum election to which it may appeal the contracting officer's adverse decision. Pursuant to § 606, it may appeal to the agency board within 90 days of the contracting officer's decision, which decision is reviewable by the Court of Appeals for the Federal Circuit (CAFC). (41 U.S.C. § 607(g).) Alternatively, it may *elect* to bring a direct access *de novo* action in this court. (*Id.* § 609(a)(1).)[2]

Prior to filing subject action in this court on August 13, 1984, plaintiff presented the three equitable adjustment claims (Counts I–III of the complaint here) and the withheld payment claim (Count V of the complaint here) to the contracting officer, Jan-

ice B. Dumas. Ms. Dumas denied each claim by separate letters to plaintiff dated December 16, 1983, February 21, 1984, February 21, 1984, and January 4, 1984. Plaintiff was *specifically* informed by each letter of its right to appeal each denial to either the Department of Transportation Contract Appeals Board (Board) or to the U.S. Claims Court. Initially, relative to what has been described *supra* as Counts I–III and V in this court, plaintiff previously filed timely notices of appeal and then complaints with said Board. Answers thereto were later filed in opposition to each appeal by the BOP, and pretrial discovery was also commenced.

Thereafter, during the discovery phase, plaintiff apparently had a change of heart relative to the precise forum in which it desired to pursue its appeals and proceeded to modify its litigation strategy. Motion(s) for dismissal, without prejudice, as to claims later filed in this court as Counts I–III and V, were filed with the Board. On June 18, 1984, without explanation, plaintiff's motions were granted by the Board, and the Board appeals relative to Counts I–III and V (*i.e.*, docket Nos. 1471, 1512, 1517, and 1454, respectively) were dismissed without prejudice with concurrence of respondent, the defendant here.

Less than two months later, on August 13, 1984, plaintiff's five count complaint was filed in this court. Contained therein, as noted *supra*, were Counts I–III and V, which were in all material particulars identical to those four docketed claims, *supra*, appealed to and later dismissed by the Board on June 18, 1984. In addition, as Count IV, plaintiff alleged a "conspiracy" between the BOP and the Department of Labor (DOL) in instigating an investigation of plaintiff's and its subcontractor's wage practices relative to the standards of the Davis-Bacon Act, 40 U.S.C. § 276a et seq. (1982). Plaintiff alleges, *inter alia*, that this investigation cost it $8,000 in wage payments wrongfully withheld from it due

---

**2.** Section 609(a)(1) provides, *inter alia*, that "in lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board, a contractor *may* bring an action directly on the claim in the United States Claims Court...." (emphasis added). 41 U.S.C. § 609(a)(1) (1982).

to the alleged wrongful wage practices of its subcontractors. Plaintiff seeks a refund of the $8,000 and an injunction restraining the BOP and DOL from withholding any future payments.

On these facts, defendant has moved for summary judgment (now converted to a motion to dismiss, *supra*) raising two distinct arguments: first, that Counts I–III and V must be dismissed for lack of jurisdiction inasmuch as plaintiff's previous decision to institute appeals to the Board constituted a binding and irrevocable election under the CDA [3] so as to deprive this court of *direct access* jurisdiction over those same claims; and second, that Count IV is also jurisdictionally barred from consideration inasmuch as plaintiff has failed to exhaust administrative remedies under the CDA by first allowing a decision on this claim to be made by the DOL pursuant to clause 9 of plaintiff's contract. In support of its election argument relative to Counts I–III and V, defendant avers that plaintiff made an informed, knowing and voluntary election to proceed before the Board within the standards enunciated in *Prime Construction Co., Inc. v. United States*, 231 Ct.Cl. 782 (1982), and *Tuttle/White Constructors, Inc. v. United States*, 656 F.2d at 644. Relative to a dismissal of Count IV for failure to exhaust, defendant cites *Collins International Service Co. v. United States*, 744 F.2d 812 (Fed.Cir.1984), for the proposition that the "Department of Labor has final authority to settle wage disputes and failure to abide by such final decision is a violation of the contract." Defendant's Motion for Summary Judgment at 8.

In reply, plaintiff asserts that defendant, because it concurred in the dismissal without prejudice, and understood plaintiff was to bring the same claims in this court,

"waived any question of jurisdiction." Plaintiff's Opposition Brief at 4. No authority is cited for this proposition. According to plaintiff, "[t]his understanding [that the dismissed claims would be brought in the U.S. Claims Court] was a part of the consideration to Plaintiff for settlement of a number of ... [other] pending appeals before the Board." *Id.*[4] If jurisdiction is lacking in this court, plaintiff asks that the dismissed claims be remanded to the Board.

Relative to defendant's claim that clause 9 of the contract mandates an exhaustion of administrative remedies for Count IV, plaintiff argues to the contrary that the contracting officer has sufficient discretion to decide this claim. This is particularly so where, as here, plaintiff continues, it is not challenging a determination of the Department of Labor but rather the enforcement decision of the contracting officer. On this basis, "plaintiff believes itself entitled to review of the Contracting Officer's actions before this Court." *Id.* at 5. No case authority, however, is cited in support of that belief.

On the basis of the contentions raised by the pleadings *supra*, as well as oral argument of the parties, we are constrained to agree with the defendant that plaintiff's complaint must be dismissed with respect to all counts. As to Counts I–III and V, it is clear beyond cavil that under applicable precedent plaintiff has failed to present probative evidence which will rescue it from its previous binding election to appeal to the Board. As to Count IV, we believe that plaintiff is here prematurely inasmuch as it has yet to present said claim to the contracting officer for a decision. We discuss each of these conclusions seriatim.

---

**3.** Defendant contends that since plaintiff elected to appeal the contracting officer's decision to the Board under § 606, then the Board's determination is only reviewable by the Court of Appeals for the Federal Circuit (CAFC) under § 607(g).

**4.** In its reply brief, and at oral argument, counsel strenuously denied plaintiff's averments. In that connection, defendant states that plaintiff "is in error when it states that defendant knew

that it was [plaintiff's] ... intention to file, in this Court, the claims which were dismissed without prejudice by the ... Board. Counsel ... never stated to counsel for defendant nor to agency counsel that he planned to file suit in the Claims Court. Thus, the Government did not know of plaintiff's intentions and ... never agreed to such a course of action...." Defendant's Reply Brief at 1.

III. *Discussion*

A. *Counts I–III and V*

█ Relative to Counts I–III and V, the question presented is whether plaintiff's previous filings of the identical claims at the Board as were filed here (*i.e.*, docket Nos. 1471, 1512, 1517 and 1454), notwithstanding their dismissal without prejudice, constitutes a binding election within the meaning of the CDA so as to deprive this court of direct access jurisdiction. As is well now understood, the CDA governs the appeal rights of all contracts entered into *on and after* its effective date, March 1, 1979, or pending thereon. *W.M. Schlosser Co. v. United States*, 705 F.2d 1336, 1340 (Fed.Cir.1983); *Skelly and Loy v. United States*, 231 Cl.Ct. 370, 685 F.2d 414, 418 (1982). Plaintiff's contract, entered into in January 1983, for the renovation of government property, clearly falls within this Act. *Prime Construction Co., Inc. v. United States, supra.* As plaintiff was specifically advised by the contracting officer in her decision letters denying its claims, the CDA provided plaintiff with a one time *election* to appeal said adverse determination to either the Department of Transportation Contract Appeals Board within 90 days of the contracting officer's decision, or to this court within 12 months. An appeal to the Board, under the CDA, permits the contractor further appeal rights only to the CAFC (41 U.S.C. § 607(g)). Conversely, the contractor may bypass the Board by appealing the contracting officer's adverse decision by direct access to this court (41 U.S.C. § 609). As the record discloses, by filing its notices of appeal to the Board and following up with filed complaints asserting claims contained in Counts I–III and V, plaintiff irrevocably manifested its intent to choose the former, *i.e.*, the Board route.

Once the fact of an election to appeal the contracting officer's adverse decisions to the Board has been established, our precedent mandates that the only remaining issue is whether that election was "informed, knowing and voluntary." *Prime Construction Co., Inc.*, 231 Ct.Cl. at 782; *Tuttle/White Constructors*, 656 F.2d at 644;

*National Electric Coil v. United States*, 227 Ct.Cl. 595 (1981). If so, then the election is binding and we are without jurisdiction. If not, we would naturally proceed to the merits *de novo*, and disregard any action taken by the Board. In determining whether an election is informed and knowing, this court and our predecessor court have considered a number of related circumstances.

As a general rule, in all such cases, this court has looked first and foremost at whether the plaintiff was ever informed, or was erroneously informed, of his appeal rights pursuant to the CDA. *National Electric Coil*, 227 Ct.Cl. at 597; *Prime Construction*, 231 Ct.Cl. at 783; *Santa Fe Engineers, Inc. v. United States*, 230 Cl.Ct. 512, 677 F.2d 876 (1982); *Beacon Oil Co. v. United States*, 8 Cl.Ct. 695, 698 (1985). Generally, these criteria have been held to be dispositive. However, several additional circumstances surrounding a plaintiff's appeal to the Board have been given varying degrees of consideration. For example, whether the plaintiff filed an actual complaint, or merely a notice of appeal before the Board, *Prime Construction*, 231 Ct.Cl. at 783; *Tuttle/White Constructors*, 656 F.2d at 649 (Kunzig, Jr., concurring); whether the Board in dismissing the appeal did so without prejudice, *National Electric Coil*, 227 Ct.Cl. 596–97; *Gregory Lumber Co. v. United States*, 230 Ct.Cl. 745, 748 (1982); *but cf. Beacon Oil*, 8 Cl.Ct. at 699; and lastly, whether the government consented to dismissal without prejudice or otherwise advised "the board [that] they had no objection to dismissal without prejudice if the board deemed the Court of Claims option was still open...." *Prime Construction*, 231 Ct.Cl. at 783, citing *National Electric Coil*, 227 Ct.Cl. at 595; *Boyd Lumber Co. v. United States*, 5 Cl.Ct. 803, 806 (1984). However, *Prime Construction*, 231 Ct.Cl. at 784, teaches that "[t]he view of all our cases being that the notice of appeal to a ... board is such an election ... plaintiff made its election when it filed the notice and is now bound.

[T]he lack of any complaint does not establish otherwise."

Against this background, in all aspects material to our determination herein, we believe and so find that the plaintiff's election to file with the Board was very much informed, definitive, and unconditional, and therefore binding as a matter of law. This is so because in each of the four contracting officer's letters referenced *supra,* in which the claims asserted herein in Counts I–III and V were denied on the merits by the contracting officer, on the first page, preceding any substantive discussion, plaintiff's appeal rights were duly emphasized. There, it was clearly stated that:

> If you decide to make such an appeal [to the Board], *you must mail* or otherwise furnish *written notice* thereof *to the Board of Contract Appeals within 90 days from the date you receive this decision. * * * Instead of appealing to the Board of Contract Appeals, you may bring an action directly to the U.S. Court of Claims within 12 months of the date you receive this decision.*

Plaintiff's Complaint, Appendix (emphasis added). We, therefore, believe for plaintiff to have made an *informed election,* the BOP was required to have informed it of no more than the foregoing. The cited language is neither vague nor ambiguous, and, appropriately, it is not contended to be so by the plaintiff. Being specifically advised of its appellate options, plaintiff thereafter proceeded by filing complaints asserting each claim; the government responded with appropriate answers; and significant discovery was undertaken. Thus, at that posture, and prior to the voluntary dismissal, plaintiff was deeply enmeshed in a litigation mode. If mere "notice of appeal" to the Board is a binding election per *Prime Construction, supra, a fortiori,* the facts here can lead to only one finding.

Concomitantly, plaintiff makes much of the fact that the Board dismissed its appeals *without* prejudice. Be that as it may, given plaintiff's knowledge at the time of that dismissal, this additional circumstance is insufficient in our view to overcome plaintiff's otherwise informed and binding election. *National Electric Coil* is a case in which petitioner initially proceeded to the Board under the CDA by filing a notice of appeal from the contracting officer's adverse decision. Before a complaint was filed thereat, petitioner moved the Board to dismiss without prejudice. The Board did so with the remark that it would reinstate the appeal if the Court of Claims declined to take jurisdiction. In that case, factually distinguishable from the case at bar, the Board's decision to dismiss without prejudice was based on a finding that no previous election had been made at the time plaintiff moved to dismiss. This was so because the plaintiff had not been informed *prior to that time* of his right to appeal to the predecessor Court of Claims. Because of this omission, the Court of Claims concluded—"on the facts before us, it does not appear that plaintiff initially "elected" to appeal to the Board." *National Electric Coil,* 227 Ct.Cl. at 597. By contrast, in the case at bar, it is indisputable that prior to and at the time of filing with the Board, as well as at the time it moved to dismiss, plaintiff had sufficient knowledge of its appeal options to have made a previously binding election. Therefore, unlike *National Electric Coil,* to give effect to the Board's dismissal without prejudice in this case *would be* to override an otherwise validly informed election and in turn defeat the threshold congressional purpose of providing a binding *elective* remedy. Under the CDA, this we cannot do as a matter of law.

As for plaintiff's contention that the government somehow waived the jurisdictional requirements of the CDA when it consented to the dismissal without prejudice, we are similarly unpersuaded. As a basic proposition, because federal courts are courts of limited statutory jurisdiction, jurisdictional deficiencies cannot be waived. This is especially true where, as here, we are concerned with waivers of sovereign immunity which must be strictly construed. *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957).

Therefore, just as we cannot find jurisdiction by overriding an otherwise binding election based on a dismissal without prejudice by a Board, we are similarly constrained to find a lack of jurisdiction regardless of whether both parties agree to it by mutual consent, or one party should arguably be estopped from so contesting.

It can only be concluded, given the foregoing, that plaintiff simply went too far at the Board level, knowing full well its options pursuant to the CDA, for this court to now step in and set those actions (elections) aside. Counts I–III and V are therefore dismissed for lack of jurisdiction.[5]

### B. Count IV

As stated *supra*, Count IV alleges a "conspiracy" between the BOP and the DOL to coerce wrongful conduct in instigating an investigation of plaintiff's and its subcontractor's wage practices relative to the standards of the Davis-Bacon Act, 40 U.S.C. § 276a (1982). Plaintiff alleges that, as a result of this unwarranted investigation, the contracting officer wrongfully withheld from it $8,000 in contract payments based not on plaintiff's *own* Davis-Bacon violations, but on those of its subcontractors. The issue raised by the defendant's response is whether this court has jurisdiction over Count IV whereas here plaintiff has allegedly failed to exhaust an administrative remedy for the resolution of such claims found in clause 9 of plaintiff's contract. In assessing our jurisdiction over Count IV, we proceed from the perspective of the standard jurisdictional premises of the Contract Disputes Act. In so doing, we necessarily consider as a threshold inquiry whether plaintiff's claim is otherwise properly here pursuant to the *direct access* provision of the CDA (41 U.S.C. § 609(a)(1)).

Given the facts in this case, plaintiff's appeal rights in this court are governed exclusively by the provisions of the CDA.[6] *W.M. Schlosser Co.*, 705 F.2d at 1336; *Skelly and Loy*, 685 F.2d at 418. The Act is clearly applicable to Counts I–III and V, *supra*, and therefore, on the teachings of *Schlosser*, mandates plaintiff's avenue of dispute resolution to *all* claims arising out of its contract with BOP. *Id.* This is so despite any lingering reference to a contract "disputes clause" intimating to the contrary. This rule applies, according to the precise terms of the CDA itself, "[u]nless otherwise specifically provided [there]in." 41 U.S.C. § 602. On this basis, therefore, we begin with the fundamental proposition that plaintiff's claim is properly here as a matter of right under direct access, *unless*, of course, a provision of the CDA "otherwise specifically provide[s]," or one of the CDA's own requirements is otherwise *not* complied with.

A basic prerequisite to direct access jurisdiction in this court is that the contractor-plaintiff first must present its claim, in writing, to its duly designated contracting officer. 41 U.S.C. §§ 605(a), 609. Absent an appealable decision (actual or deemed) by the contracting officer on the claim proffered here, the direct access provision found at 41 U.S.C. § 609 is not applicable by its own terms. Section 605 outlines the procedure mandating the initial presentation of claims to the contracting officer. *Id.* § 605. And, in only one instance is an exception postured so as to make such a presentation not required— and it provides that:

> The authority of this subsection *shall not extend to a claim or dispute for penalties or forfeitures prescribed by statute or regulation which another*

---

5. With respect to plaintiff's request for a remand to the Board, we decline to so rule upon the authority of *Testan v. United States*, 424 U.S. 392, 404–05, 96 S.Ct. 948, 956–57, 47 L.Ed.2d 114 (1976). *See also* 28 U.S.C. § 1491 (1982), *"[i]n any case within its jurisdiction,* the court shall have the power to remand...." (emphasis added). Stated conversely, in any case not within

its jurisdiction, as here, this court does not have the power to remand.

6. In the *Schlosser* case, the Federal Circuit has held that "[o]nce the Act is applicable, it 'control[s] all avenues of appeal available to the plaintiff.'" *Schlosser*, 705 F.2d at 1340, *citing Skelly and Loy*, 685 F.2d at 418.

*Federal agency is specifically authorized to administer*, settle, or determine. *Id.* § 605(a).

It is clear that plaintiff has not presented the averments in Count IV to its contracting officer for decision. No such allegation has been made, and the evidence so far presented would support no other conclusion. Thus, without regard to whether Count IV is governed by some other "penalty or forfeiture" provision committed to the authority of another "Federal agency," it is indisputable that Count IV is not at present redressable in this court pursuant to the *direct access provision* contained in § 609. Plaintiff must first seek a decision on that claim by its contracting officer (who has previously withheld funds based on clause 6 of the contract). This is so because § 609(a)(1) provides, *inter alia,* that "in lieu of *appealing the decision of the contracting officer* under section 605 ... to an agency board, a contractor may bring an action directly ... in the U.S. Claims Court...." *Id.* § 609(a)(1). As to Count IV, plaintiff has not submitted the underlying claim to the contracting officer, nor has the contracting officer rendered an actual or deemed "decision" with respect thereto.

█ Given the foregoing, it becomes clear that defendant's argument, that clause 9 of plaintiff's contract governs plaintiff's administrative remedies *prior* to suit here, must be based on the "penalty or forfeiture" exception cited *supra.* Otherwise, plaintiff's failure to seek a decision from its contracting officer would be a sufficient basis upon which to dismiss the claim. The clause of plaintiff's contract on which defendant relies, clause 9, is as follows:

### 9. DISPUTES CONCERNING LABOR STANDARDS

Disputes arising out of the labor standards provisions of this contract shall be subject to the Disputes clause except to the extent such disputes involve the meaning of classifications or wage rates contained in the wage determination decisions of the Secretary of Labor or the applicability of the labor provisions of this contract which questions shall be referred to the Secretary of Labor in accordance with the procedures of the Department of Labor.

Defendant's Motion for Summary Judgment, Appendix p. 65. This clause is standardly included in contracts such as that of the plaintiff, pursuant to the requirements of the Davis-Bacon Act, *supra.* The Davis-Bacon Act sets minimum wage levels for employees of contractors and subcontractors on certain government construction contracts valued over $2,000. 40 U.S.C. § 276a. Where a contractor or subcontractor fails to pay wages according to the rates prescribed by the Secretary of Labor pursuant to the Act, the contracting officer is given authority to withhold construction payments in an amount equal to the deficiency in wages. *Id.;* 29 C.F.R. § 5.5(a)(2) and (c)(3); and clause 6 of subject contract. The money is then distributed to the affected workers. 40 U.S.C. § 276a–2.

While the statutory scheme described above would appear to constitute a sort of "forfeiture" provision vesting decision-making power relative thereto, through clause 9, with the Secretary of Labor, we need not decide that question. Assuming, *arguendo,* the Davis-Bacon Act is such a forfeiture statute and 29 C.F.R. § 5.5(a)(2) and (c)(3) is a forfeiture regulation within the meaning of CDA § 605(a), we are nonetheless convinced that the nature of Count IV is not such a claim as to come within the confines of clause 9 of the contract. The foregoing conclusion is supported by plaintiff's admission contained in its opposition brief dated November 13, 1984, at page 5. There it states that—

It is not the determination of the Labor Department or the correctness of the determinations of the Labor Department which are raised in Plaintiff's Complaint but the contesting of these enforcement actions by the Contracting Officer. The Plaintiff believes itself entitled to review

of the Contracting Officer's actions before this Court.

Thus, although clause 9 mandates the procedure suggested by the defendant regarding certain disputes involving "labor standards," that clause has no applicability to Count IV of plaintiff's petition, and does not override our earlier observation that Count IV must be dismissed for failure to comply with the provisions of CDA § 605(a).

By its terms, clause 9 does not mandate that *all* "Disputes Concerning Labor Standards" be first submitted to the Secretary of Labor, nor does the Davis-Bacon Act, from which this clause derives. *See* 40 U.S.C. § 276a. According to clause 9, only two categories of claims are within the Secretary's jurisdiction: (1) those concerning "the meaning of classifications or wage rates" contained in the DOL's wage determination, and (2) those concerning the "applicability of the labor provisions" of the contract. In general terms, these two categories outline the major statutory responsibilities of the Secretary of Labor thereunder. Under the Act, the Secretary of Labor "classifies" contracts and workers relative to the "applicability" of the minimum "wage rates" he has determined based on a number of statutory criteria. *Id.* Those decisions, in turn, are appealable to the Wage Appeals Board, the Board within the DOL which has been delegated the authority to speak with finality over such determinations by the Secretary.[7] *See* 29 C.F.R. § 7.1 *et seq.*

In the case at bar, we do not read the plaintiff's grievance in Count IV to be with the Secretary of Labor, nor with any determination made by him. Rather, Count IV is directed at the contracting officer's action withholding funds from plaintiff for the wage practices of its subcontractor under clause 6 of the contract. Plaintiff alleges that the contracting officer erred in withholding and assessing monies for its subcontractor's wage deficiencies against it *instead* of the subcontractor. Nowhere in plaintiff's complaint does plaintiff contest the substantive finding of a wage deficiency against the subcontractor, nor the Secretary's wage rate determinations, nor the applicability of Davis-Bacon to its contract, its subcontractor's contract, or any of the employees of either. In essence, the complaint here is between the plaintiff and the contracting officer relative to the *enforcement* of a contractual provision, *i.e.*, clause 6. It is simply not a matter involving the Secretary of Labor, and therefore does not arise under clause 9.[8]

On the basis of the foregoing, we find jurisdiction in this court lacking inasmuch as plaintiff has not complied with the applicable provisions of the CDA relative to obtaining a decision by a contracting officer. Count IV must, therefore, be dismissed, without prejudice, to return, if at all, after a *written claim* has been submitted to the contracting officer in accordance with the terms of 41 U.S.C. § 605. *See Schlosser,* 705 F.2d at 1340.[9]

---

7. For some background on the workings of Davis-Bacon in our predecessor court and other courts, *see Nello L. Teer Co. v. United States,* 172 Cl.Ct. 255, 348 F.2d 533 (1965), *cert. denied,* 383 U.S. 934, (1966); *Northern Georgia Building and Construction Trades Council v. Goldschmidt,* 621 F.2d 697 (5th Cir.1980). *See also United States v. Binghamton Construction Co.,* 347 U.S. 171, 74 S.Ct. 438, 98 L.Ed. 594 (1954).

8. As for plaintiff's request for a prospective injunction independent of its claim for refund, we dismiss this request summarily as without merit. As has long been held, this court has no independent equity jurisdiction to award injunc-

tive relief except in the limited case of preaward contract disputes. *See* 28 U.S.C. § 1491; *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

9. "The proper course of action—for a contractor [proceeding under the Act] whose case is dismissed for lack of jurisdiction—is the following: (1) properly certify the claim; (2) resubmit the claim to the contracting officer; and (3) if there is then an adverse contracting officer's decision, appeal either to the board ... or directly to [the Claims Court]...." *Schlosser,* 705 F.2d at 1340, *quoting Skelly and Loy,* 685 F.2d at 419.

## IV. *Conclusion*

Defendant's motion for summary judgment treated by the court as a motion to dismiss, to the extent qualified and discussed herein, is granted. The Clerk shall dismiss Counts I–III and V, with prejudice, and Count IV, without prejudice, in accordance with this opinion. Costs shall not be assessed.

IT IS SO ORDERED.