BEACON OIL COMPANY (now known as Ultramar Inc.), Appellant,

v.

Hazel R. O'LEARY, Secretary of Energy, Appellee.

No. 95–1116.

United States Court of Appeals, Federal Circuit.

Dec. 4, 1995.

**392**

David G. Wilson, Andrews & Kurth L.L.P., Washington, D.C., argued for appellant.

Harold D. Lester, Jr., Commercial Litigation Branch, Department of Justice, Washington, D.C., argued for appellee. Of counsel was I. Avrum Fingeret, Department of Energy, Washington, D.C.

Before NEWMAN, RADER, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

In November 1979, appellant Beacon Oil Company purchased a large quantity of crude oil from the government. A dispute subsequently arose as to the proper price that Beacon should have paid for the product it purchased. After lengthy proceedings, the Department of Energy Board of Contract Appeals granted summary judgment reject-ing Beacon's challenges to the price it was charged. *Beacon Oil Co.*, 94–3 B.C.A. (CCH) ¶ 27,147, 1994 WL 469308. We reverse the Board's summary judgment and remand this case to the Board for trial.

I

The proceedings in this case and in the related *Powerine* litigation have been dishearteningly protracted. The two cases stem from a set of contracts between oil companies and the Department of Energy for the purchase of crude oil between 1978 and 1980. The contracts were formed pursuant to the Naval Petroleum Reserves Act of 1976, 10 U.S.C. § 7420–38, which authorizes the government to sell crude oil to domestic refiners in order to ease the effect of worldwide oil shortages on those refiners and to generate revenue for the government. A number of domestic companies, including Beacon, entered into contracts to purchase the government oil.

To ensure that the government obtained a favorable price for its oil, the Act provided that the oil "must be sold at a cost not less than the prevailing local market price of comparable petroleum." 10 U.S.C. § 7430(d)(2). In an effort to achieve that objective, the government put price clauses in each of the contracts that pegged the price at which the oil would be sold to the highest price "posted" by certain purchasers of crude oil who were active in the market. The purpose of those clauses was to track the market in oil prices and obtain the highest prevailing local market price available for oil of similar grade. *See Powerine Oil Co.*, 81–2 B.C.A. (CCH) ¶ 15,430, at 76,464, 1981 WL 7250.

Beacon's contract entitled it to purchase crude oil from the Elk Hills Naval Petroleum Reserve in California between February 1, 1979, and January 31, 1980. The contract allowed Beacon to purchase crude oil produced from two geologically distinct zones, referred to as "Shallow Zone" and "Stevens Zone" oil. The price clause in Beacon's contract provided that the base price would be "the highest posted stripper oil price per barrel of all the prices which are posted or

published by the purchaser of crude oil from the [fields within each zone] for crude oil of like quality."

Beacon purchased large amounts of petroleum pursuant to the 1979 contract. For the oil it purchased in November 1979, which is the purchase at issue in this case, Beacon paid the government a price that was based on the price posted by the ARCO Petroleum Products Company in its price bulletin dated November 30, 1979.

## A

The litigation that led to this case began when Powerine Oil Company, which had purchased government oil in 1978, challenged the price it was charged for that oil. Powerine's contract provided that the price of the oil for each month of the contract would be based on the highest prices posted by a "principal purchaser" of oil. The government based the prices it charged Powerine on the prices posted by ARCO beginning in May 1978. Although the government argued that ARCO was a "principal purchaser" of crude oil within the meaning of the 1978 contract, the Energy Board of Contract Appeals ruled in favor of Powerine, holding that ARCO was not a "principal purchaser" of crude oil from the contract-referenced fields during the 1978 contract year, and that ARCO's posted prices therefore could not be used to determine the contract price. *Powerine Oil Co.*, 81–2 B.C.A. (CCH) ¶ 15,430, at 76,466–68, 1981 WL 7250 (1981) (*Powerine I* ). The Board agreed with Powerine that in order to qualify as a "purchaser" of crude oil within the meaning of the contract, ARCO had to have made arms-length purchases from independent third parties; intracorporate transfers were not sufficient. Defining a "purchaser" as one who engages in third-party purchases, the Board explained, is "the interpretation that best meets the intent of the contract to locate the highest price in the local market area while preserving the need to insure credibility and accuracy of the valuation system." *Id.* at 76,467. Because the evidence showed that ARCO made only "relatively insignificant" third-party purchases of crude oil from the contract-referenced fields during the contract period, the Board held

that ARCO could not be considered a "principal purchaser" within the meaning of the contract. *Powerine Oil Co.*, 82–1 B.C.A. (CCH) ¶ 15,633, at 77,213, 1981 WL 7250 (1982) (on motion for reconsideration).

The decision in *Powerine I* led Beacon and a number of other oil companies to seek refunds of payments they had made under oil purchase contracts for the years 1978 through 1980. The claims of all the companies except Beacon were consolidated in the Energy Board of Contract Appeals under the caption *Powerine Oil Co.* In addressing the Powerine group's challenge to the prices they had been charged for the 1979 contract year, the Board first held that the claims were untimely, and it dismissed them on that ground. *Powerine Oil Co.*, 87–1 B.C.A. (CCH) ¶ 19,631 (1987) (*Powerine II* ). This court, however, vacated the Board's order, *Powerine Oil Co. v. United States*, 837 F.2d 1581 (Fed.Cir.1988) (*Powerine III* ), and on remand the Board reinstated the claims, *Powerine Oil Co.*, 89–3 B.C.A. (CCH) ¶ 22,-143 (1989) (*Powerine IV* ). The case then went to trial, and after trial the Board ruled against the claimants on their 1979 claims, holding that it was appropriate for the government to rely on ARCO's posted prices in setting the base prices for crude oil that the claimants purchased under the 1979 contracts. *Powerine Oil Co.*, 91–2 B.C.A. (CCH) ¶ 24,007 (1991) (*Powerine V* ). This court affirmed the Board in a non-precedential opinion. *Pacific Refining Co. v. Watkins*, Nos. 91–1490 & 91–1491, 1993 WL 192519 (Fed.Cir. June 8, 1993).

In *Powerine V*, the Board noted that the 1979 contracts required that a price poster be a "purchaser" of oil, not a "principal purchaser," as was required under Powerine's 1978 contract. Consistent with its ruling in *Powerine I*, the Board held that the term "purchaser" required only that the company make third-party purchases of crude oil from one of the contract-referenced fields during the contract year. The Board rejected the claimants' argument that a company could not be considered a "purchaser" unless it purchased more than a de minimis amount of oil, made such purchases during each month that the company's posted price was used,

and made its purchases at the posted price. *Powerine V,* at 120, 147–48. With respect to the question whether ARCO's prices were valid "posted prices," the Board held that ARCO's posted prices were not invalid simply because no purchases were made at those prices; "posted prices," the Board explained, are simply "lists of prices published in price bulletins by companies in the oil industry which they will pay for crude oil of a certain quality from particular fields." *Id.* at 120,-140. The Board therefore rejected the claimants' argument that the government was "required to look behind each posted price to determine if an actual purchase had been made at the posted price." *Id.* at 120,-147.

In upholding the Board's ruling, this court noted that the Board had "pointed to evidence that ARCO did purchase crude oil during each of the contract periods in question." *Pacific Refining Co. v. Watkins, supra,* at *2. The court further concluded that "[t]he evidence does not support appellants' contention that ARCO's posting of prices did not reflect market realities." *Id.* at *2.

### B

Beacon's claim with regard to the 1979 contract proceeded on a separate track from the claims of the *Powerine* claimants, even though the price terms in Beacon's contract were identical in all material respects to the terms in the other 1979 contracts. After dismissing Beacon's first appeal for failure to certify its claim, *Beacon Oil Co.,* 83–1 B.C.A. (CCH) ¶ 16,217, 1982 WL 7292 (1982) (*Beacon I* ), the Board permitted Beacon to proceed under the disputes clause of the contract, but then dismissed on the ground that Beacon had raised its claim too late, *Beacon Oil Co.,* 84–2 B.C.A. (CCH) ¶ 17,279, 1983 WL 13332 (1983) (*Beacon II* ). Beacon sought relief in the Claims Court, which held that the Board should not have entertained Beacon's 1979 claim under the disputes clause of the contract after Beacon had elected to proceed under the Contract Disputes Act. *See Beacon Oil Co. v. United States,* 8 Cl.Ct. 695 (1985) (*Beacon III* ). Beacon returned to the Board, which disagreed with the Claims Court's ruling on the Board's

authority to entertain Beacon's appeal under the disputes clause and again dismissed the appeal on timeliness grounds, *Beacon Oil Co.,* 86–3 B.C.A. (CCH) ¶ 19,206, 1986 WL 20149 (1986) (*Beacon IV* ). This court then vacated the Board's ruling, holding that Beacon had validly elected to proceed under the Contract Disputes Act, that the Board had no jurisdiction over the case under the disputes clause of the contract, and that, now that the 1979 claim was certified, the case had to be decided under the Contract Disputes Act. *Beacon Oil Co. v. United States,* 832 F.2d 593 (Fed.Cir.1987) (*Beacon V* ).

On remand, after the Board denied Beacon's motion to consolidate its case with *Powerine,* the government moved for summary judgment against Beacon on the merits. While that motion was pending, the Board decided *Powerine V.* At that point, Beacon requested and was granted leave to file a supplemental memorandum in opposition to the government's motion for summary judgment, in which Beacon withdrew its previous admission that ARCO had made third-party purchases of Stevens Zone oil from one of the contract-referenced fields during the 1979 contract term.

In opposing summary judgment, Beacon sought to distinguish its case from *Powerine V* on two grounds. First, Beacon noted that in *Powerine V* the parties agreed that ARCO made third-party purchases from both the Shallow Zone and the Stevens Zone fields during the 1979 contract year. In this case, by contrast, Beacon asserted that ARCO made no third-party purchases from any of the Stevens Zone fields during that year and therefore did not qualify as a "purchaser" for the Stevens Zone transactions within the meaning of the 1979 contract. Second, Beacon argued that, unlike the parties in *Powerine V,* it was prepared to show that ARCO's posted price for November 1979 was not a valid posted price. ARCO's posted price, Beacon contended, was a fabricated price that did not represent ARCO's good faith estimate of the market price for crude oil at the time, but was designed to generate artificially high purchase prices so that ARCO could justify charging higher prices for its products under price control regulations, or

so that it could drive up the price paid for crude oil by competitors such as Beacon.

The Board rejected Beacon's arguments and granted summary judgment for the government. *Beacon Oil Co.*, 94-3 B.C.A. (CCH) ¶ 27,147, 1994 WL 469308 (1994) (*Beacon VI* ). The Board relied principally on its conclusion that Beacon was foreclosed by principles of collateral estoppel and *stare decisis* from relitigating issues that had been decided against the oil companies in *Powerine V*. The Board noted that the contract at issue in Beacon's case was identical to the 1979 contracts under review in *Powerine V* and that the interests of the parties in *Powerine V* were identical to Beacon's interests in the instant case. Accordingly, the Board concluded that it was fair to deny Beacon an opportunity to relitigate the issues decided in *Powerine V*.

The Board concluded that all the issues raised by Beacon "were involved in *Powerine*, and were there raised and actually and fully litigated." Based on that conclusion, the Board ruled that the issues Beacon sought to litigate "are governed by the Board's decision in *Powerine*." The Board therefore dismissed Beacon's appeal with prejudice.

## II

▪▪ The government concedes that the Board was wrong to apply collateral estoppel against Beacon in this case, and we agree. Beacon was not a party to *Powerine V*, and as a general matter "there can be no collateral estoppel against a [party] who has not had 'a full and fair opportunity to litigate the claim' at issue." *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1571 (Fed.Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1540, 128 L.Ed.2d 192 (1994). Although its position was parallel to that of the claimants in *Powerine V*, the similarity of the position taken by the claimants in the two cases is not a sufficient reason to deny Beacon the right to introduce its own evidence and make its own arguments in favor of that position. *See Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1572 (Fed.Cir.1983); *United States v. Bonilla Romero*, 836 F.2d 39, 43 (1st Cir.1987); *see generally McKin-*

*ney v. Alabama*, 424 U.S. 669, 675–76, 96 S.Ct. 1189, 1193–94, 47 L.Ed.2d 387 (1976). Because the claimants in *Powerine* did not represent Beacon's interests, and because Beacon did not control or participate in that litigation, it cannot be collaterally estopped by the resolution of any issues decided in that case.

▪▪ Nor is the doctrine of *stare decisis* applicable here, as the government contends. *Stare decisis* applies only to legal issues that were actually decided in a prior action, *see Schott Optical Glass, Inc. v. United States*, 750 F.2d 62, 64 (Fed.Cir.1984); *Gately v. Massachusetts*, 2 F.3d 1221, 1226 (1st Cir. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1832, 128 L.Ed.2d 461 (1994), and the two issues that Beacon raised before the Board and renews in this court were not litigated or resolved in *Powerine V*. First, Beacon argues in the present case that ARCO was not a "purchaser" of Stevens Zone oil during 1979, because it made no third-party purchases from any of the contract-referenced fields for Stevens Zone oil during 1979. That issue was not presented in *Powerine V*, because the *Powerine* claimants stipulated that ARCO made third-party purchases of both Shallow Zone and Stevens Zone crude oil from contract-referenced fields in that contract year. Second, Beacon argues that the price ARCO posted during November 1979 was not a valid posted price, because it was not a bona fide statement of the price ARCO would pay for crude oil on the open market. The *Powerine* claimants did not make that argument, but instead argued that ARCO's posted price could not be used because ARCO did not make any actual purchases at that price. Thus, the Board erred by treating Beacon as foreclosed from litigating the two issues that it sought to raise in challenging the government's calculation of the contract price for November 1979.

## III

▪▪ While conceding that it was error for the Board to invoke collateral estoppel, the government argues that the Board was nonetheless correct in entering summary judgment against Beacon. We disagree, and we

therefore remand the case to the Board for trial on the "purchaser" and "posted price" issues.

## A

With respect to the "purchaser" issue, Beacon's position is that ARCO was not a "purchaser" of Stevens Zone oil, because ARCO made no third party purchases of Stevens Zone oil from any of the contract-referenced fields during the 1979 contract year. Accordingly, Beacon asserts, ARCO's posted price for November 1979 may not be used as the basis for the contract price for the Stevens Zone oil that Beacon purchased during that month.

Beacon does not contest the Board's definition of "purchaser," *i.e.*, a company that purchased crude oil from a third party during the contract year from a contract-referenced field. Beacon's contention is that its evidence indicates that ARCO did not make third-party purchases from the Coles Levee field, the only contract-referenced Stevens Zone field for which ARCO posted prices during the 1979 contract year. The government makes two responses: (1) that Beacon should be held to its prior admission that ARCO made qualifying purchases from the Coles Levee field during the contract year; and (2) that in any event Beacon's showing at the summary judgment stage was insufficient to raise a triable question with respect to the "purchaser" issue.

■ As to the government's argument concerning Beacon's prior admission, the Board granted Beacon leave to file the supplemental response in opposition to the government's summary judgment motion, in which Beacon withdrew its admission, and the Board's decision in that respect cannot be regarded as an abuse of discretion. The withdrawal of the admission was based on new information obtained by Beacon regarding ARCO's purchasing practices, and as the Board found, the government failed to show that it was prejudiced by Beacon's change of position on that issue.

As to the government's argument that the Board independently analyzed Beacon's evidence and found it insufficient to require a

trial, Beacon correctly points out that the Board decided the "purchaser" issue on the basis of the record in the *Powerine* case. Thus, citing the *Powerine* record, the Board held that the record "established that ARCO purchased crude oil from third parties during the contract year from each and every contract-referenced field in which it posted; hence ARCO was a purchaser." 94–3 B.C.A. (CCH) ¶ 27,147, at 135,302. The Board apparently did not consider whether the record in *this* case supported the same conclusion.

The only statement in the Board's opinion that squarely addresses the record in this case, as it applies to the "purchaser" issue, is the Board's assertion that the affidavit submitted by Beacon's expert, Ottie T. Vipperman, Jr., constituted an "admission that ARCO purchases qualified ARCO as a 'purchaser of crude oil' for Shallow and Stevens Zone deliveries during the contract period." *Beacon VI* at 135,303 n. 12. The cited portions of the Vipperman affidavit, however, refer only to purchases from the Midway Sunset field (a Shallow Zone reference field), and thus reflect purchases of Shallow Zone oil, not Stevens Zone oil.

Beacon offered evidence that suggested that ARCO may not have made any purchases from independent third parties, and that what appeared to be third-party purchases were instead royalty payments. The Board agreed with Beacon that royalty payments do not qualify as third-party purchases for purposes of the "purchaser" requirement of Beacon's contract. Yet the Board did not address the question whether the evidence offered by Beacon, viewed independently of the *Powerine* record, was sufficient to create a triable issue of fact on the "purchaser" issue.

## B

The other contention that Beacon presses on appeal is that it should have been allowed to challenge the validity of the "posted price" that ARCO published in November 1979.

The Board did not specifically address Beacon's argument that it should be entitled to show that ARCO's November 1979 posted price for crude oil from the Coles Levee field

was not a valid posted price as that term is defined by the Board, *i.e.,* it was not ARCO's true estimate of the value of that oil. *See Sinclair Oil Corp.,* 90–1 B.C.A. (CCH) ¶ 22,-462, at 112,775, 1989 WL 140575. The government concedes, albeit grudgingly, that a party in Beacon's position might be able to prevail if it could show that the price on which the contract price was based was not posted in good faith by the posting company, but was a contrived figure that was designed to serve manipulative purposes and did not reflect a bona fide statement of what the posting company would be willing to pay for crude oil on the open market. The government adds, however, that Beacon cannot take advantage of that possible exception to strict adherence to the price published by the posting company, because it did not offer any evidence that ARCO's posting for November 1979 was invalid on that ground.

Beacon pointed to evidence supporting its theory that ARCO's posted price did not constitute ARCO's bona fide estimate of the market price for crude oil from the referenced fields during November 1979. The Vipperman affidavit summarizes that evidence, concluding that the evidence tends to show that ARCO's posted prices did not reflect an intent to participate in the market at those prices, but that it is likely that ARCO sought (1) "to inflate the value of its intracorporate transfers of uncontrolled crude oil" in the referenced fields "by using postings in excess of the prevailing market prices in order to increase its cost justification for purposes of the DOE Price Regulations" and (2) "to affect its competitors adversely by raising their crude oil costs." That evidence was buttressed, in Vipperman's view, by the results of the high prices that ARCO posted during the contract period: "Arco's postings in [the three contract-referenced] fields provided it approximately $1.2 million of additional increased costs for purposes of justifying its product prices" and caused its competitors to pay more than $22 million more in crude oil costs "than would have been paid absent these postings."

The Board of Contract Appeals did not address these points, but instead focused on whether Beacon's representatives relied on its present interpretation of the contract at the time they entered into it. Because we believe the term "posted price" in the contract contemplates that the price at issue must be a bona fide posted price as that term is used in the industry, and not a fraudulent figure contrived to serve other purposes, we do not regard the contract as ambiguous, requiring resort to the issue of reliance. The Board's treatment of the "posted price" issue therefore does not justify the entry of summary judgment against Beacon.

## C

We have reviewed the showing made by Beacon in opposition to the government's summary judgment motion and are persuaded that it is sufficient to call for a trial on both the "purchaser" issue and the "posted price" issue. In particular, we conclude that the evidence of ARCO's conduct in connection with the prices published for Midway Sunset and Coles Levee oil in November 1979, summarized in the Vipperman affidavit and Beacon's opposition to the government's motion for summary judgment, raises a triable issue on the question whether ARCO's posted price for November 1979 was a true "posted price" within the meaning of the 1979 contract. We also conclude that the evidence of ARCO's transactions in Coles Levee oil during the 1979 contract year, summarized in Beacon's supplemental response to the government's motion for summary judgment, raises a triable issue on the question whether ARCO made any third-party purchases from the Coles Levee field during that year, and thus whether it was properly considered a "purchaser" of Stevens Zone oil for purposes of the 1979 contract. Accordingly, we direct the Board to try the two remaining issues in this case so as to avoid any further delay in bringing this long-pending matter to final resolution.

*REVERSED AND REMANDED.*