Weldon, J.,
delivered the opinion of the court.
This proceeding is based on two contracts, made between William Mitchell and the defendants, bearing date on the 3d of September, 1886, and the 11th of October, 1886, both of which are made exhibits to the petition of claimant, who sues as the receiver and assignee of said Mitchell.
*399 There '«vas no controversy as to the completion of the work and the amount due Mitchell. The findings show a complete performance of the agreements and the amount unpaid by the defendants.
The,only contention arises from the effort of the Treasury Department to protect labor and material-men, in their alleged right to be paid out of the proceeds arising from the performance of the contract, to which their labor and material contributed.
The power of the claimant to maintain this suit, although not seriously questioned by the defendants, is denied, and we are called upon to pass upon his legal capacity to recover what may be due Mitchell.
The plaintiff is not only a receiver, appointed by the Supreme Court, State of New York, sitting in the city and county of New York, but he has the additional claim of being the assignee of all demands against the United States on the part of Mitchell, the assignment being executed for the purpose of enabling the claimant to more effectually perform the duties of receiver under his appointment by the Supreme Court of the State of New York. It may be, that the personal assignment by Mitchell to claimant, it being for the indebtedness of the United States only, would not have the effect to transfer the claim to him, but his appointment as receiver under the order of the court has in our opinion that effect. It was held in the case of Erwin v. The United States (97 U. S. R., 392) “ The act of Congress of February 26, 1853, to prevent frauds upon the Treasury of the United States,” which was the subject of consideration in the Gilis Case, applies only to the voluntary assignment of demands against the Government. It does not embrace cases where there has been a transfer of title by operation of law. The passing of claims to heirs and devisees, or assignees in bankruptcy are not within the evils at which the statute aimed; nor does the construction given by this court deny to such parties a standing in the Court of Claims.”
In the case of Goodman v. Niblack (102 U. S. R., 556) it was held-that section 3477, Revised Statutes, did not prevent a claim from passing to an assignee under a general assignment for the benefit of creditors. The court said: “In what respect does the voluntary assignment for the benefit of creditors *400 wMcb is made by an insolvent debtor of all bis effects, wbicb must, if it be bonest, include a claim against tbe Government, differ from an assignment wbicb is made in bankruptcy?”
In tbis case it is true no assignment in bankruptcy could be made, and no assignment of all tbe debtor’s effects is stfiown 5 but tbe appointment of tbe claimant as receiver in tbe proceeding in tbe State of New York bas tbe effect of transferring to bim tbe title of all tbe cboses in action of Mitchell, and if tbe voluntary assignment to claimant by Mitebell (it being for tbe claims against tbe United States and not all bis property) did not bave that effect, it bas tbe effect of curing any and all defects as to tbe legality of tbe appointment of claimant so far as tbe judgment debtor is concerned. Tbe reasoning of tbe Supreme Court in tbe case of Goodman v. Niblack, in favor of assignees in bankruptcy and voluntary assignees of “all effects” by tbe debtor, properly applied, will sustain a receiver appointed by a court of competent jurisdiction in asserting tbe same title to cboses in action wMcb might as against tbe Government be asserted by assignees in bankruptcy and under deeds of general assignment.
Tbe question of tbe claimant’s capacity to sue bas to some extent been determined by tbe Supreme Court of tbe District of Columbia, and tbe Supreme Court of tbe United States in tbe case of tbe United States ex rel. Redfield v. Windom (137 U. S. R., 636), in wMcb a petition for mandamus was beard by tbe Supreme Court of tbe District of Columbia, and by appeal taken to tbe Supreme Court of tbe United States. In both courts tbe case was beard on its merits, and no question was made by tbe defendants or tbe courts, as to tbe right of tbe petitioner to maintain mandamus for tbe delivery of tbe draft in question.
In tbe answer to tbe petition for mandamus tbe respondent said * * *: <£ and he avers that to leave tbe relator to Ms remedy at law would in tbe respondent’s opinion enable tbe Government to avail itself of tbe said forfeitures or other just damages in tbe premises.”
Tbe Supreme Court said: “We think tbis return showed a sufficient cause for.tbe discharge of tbe rule and a refusal to issue tbe writ.”
Following the line of judicial construction indicated by these decisions, we determine, that for tbe recovery of whatever may *401 be due Mitchell under the two contracts tlie receiver lias a right to maintain the present form of action and have tlio com troversy settled upon the merits of the claim. Tlie defense in this court is based upon the alleged facts set up in the proceeding in mandamus. This issue was made in settling the questions of fact, as to whether Mitchell had agreed to accept the draft upon the condition, that he was to adjust the claims for the labor and material furnished by the parties whose claims had been brought to the notice of the Department. The defendants claimed that the remission of the penalty was upon the express agreement that Mitchell was to settle with his creditors. This was denied upon the part of Mitchell. The court has examined with great care the testimony on that question, and has found that no such arrangement or agreement was made. The preponderance of the testimony is, that while it might have been the purpose of the defendants to impose a condition of that kind on the statement and adjustment of the account and the execution of the draft set forth in the findings, Mitchell did not agree to it, but insisted that the draft should be issued to him without qualification or condition.
As will be seen by the contract dated September 3, 1886, a penalty of $30 a day for any and all delays in the completion of the agreement beyond the time limited is provided, and under that clause, if susceptible of enforcement to the extent of the penalty, a large amount would be due the defendants ; bnt the remission of the penalty by the Secretary of the Treasury waives and eliminates from the controversy all claim for the penalty. It is shown by the report of the officer in charge that no loss ensued by reason of - the failure upon the part of Mitchell to perform the agreement within the time, and upon that report, with other suggestions, the Secretary of the Treasury approved the allowance of $12,536, and added: “In view of the recommendation made by the superintendent of construction in the letter dated February 1, 1888 (copy herewith), the penalty named in contract for failure to complete the work at the time specified therein is hereby remitted.”
This was an unconditional remission of the forfeiture, by the officer, who by the terms of the contract had a right to determine and decide the question of forfeiture. Forfeitures are not favored in law, and unless enforced according to their let *402 ter and requirement become inoperative. The object of tlie penalty was to secure tlie defendants against losses whicli might occur to them from the failure of Mitchell to perform the agreement within the time if it is to be construed as liquidated damages; but it is not necessary to enter upon a discussion of that question. It is sufficient for the purpose of the present controversy to say, that the Secretary of the Treasury, upon reasons satisfactory to him, discharged Mitchell from the consequence of forfeiture as provided for by the agreement and his failure to perform within the time.
The brief of the counsel at some length discusses the legal effect of the execution of the drafts; but we regard that question as immaterial, inasmuch as the claimant in his petition declares on the original contracts and their performance, so that his right to recover is based upon the original cause of action springing out of, and dependent upon, the agreements between the defendants and Mitchell.
The remission of the penalty by the Secretary is not based upon any agreement made by Mitchell, but upon the recommendation of the superintendent of construction, and in the determination of the legal rights of the parties the court must accept that remission according to its legal effect and purport. The official acts of the Secretary can not be impeached or invalidated, by showing that some antecedent step taken by a subordinate officer is in contravention of the final and ultimate action of the chief of the Department.
The findings show the complete performance of the agreement by Mitchell and the amounts still unpaid by the defendants on both contracts, which in the aggregate make the sum of $15,046.38, andforthat amount a judgmentfor the claimantis ordered.