**Neil E. SHOOK, as receiver of Focus Building Systems, Inc., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 254–86C.**

United States Claims Court.

Oct. 28, 1992.

Thomas A. Hendrickson, Indianapolis, Ind., attorney of record for plaintiff.

William K. Olivier, Commercial Litigation Branch, Civ. Div., Dept. of Justice, Washington, D.C., with whom were David M. Cohen, Director, and Asst. Atty. Gen. Stuart M. Gerson, attorneys of record for defendant.

## OPINION

HORN, Judge.

This case is before the court on defendant's Motion to Dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b) of the Rules of the United States Claims Court (RUSCC), or in the alternative, for Summary Judgment, pursuant to RUSCC 56(b). Defendant contends that this court lacks jurisdiction over plaintiff's claim because the claim was not submitted for a final decision by the contracting officer prior to filing the complaint in this court, in accordance with the requirements of the Contracts Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601–613 (1988).

Plaintiff, Neil E. Shook (Shook), the receiver of Focus Building Systems, Inc. (Focus), maintains that, at the direction of the Department of Labor (DOL), the Veterans Administration (VA) unlawfully withheld $46,520.00 in progress payments on a contract between the VA and Focus, because the VA failed to withhold the funds pursuant to statute, either the Davis–Bacon Act, 40 U.S.C.App. § 276a–1 to a–5 (1982), or the Contract Work Hour and Safety Standards Act (CWHSSA), 40 U.S.C.App. §§ 327–333 (1982), or to issue proper prior notice of such withholding. Plaintiff alleges that it had presented its claim to the contracting officer of the VA, and that the VA did not deny the claim, but, rather, disclaimed any interest in the claim as a contract matter. Consequently, the DOL went ahead with the administrative wage determinations, and the monies were subsequently withheld by the VA. The plaintiff further argues that the cross-withholding of $10,459.85 on Contract 441 was not authorized by law. Plaintiff maintains that, because the VA "was not damaged by" Focus Building Systems, Inc., because the VA would be unjustly enriched by retention of the payments at issue, because "no one has a better right to the funds than the Receiver," and because the receiver is entitled to administer the funds for the benefit of creditors, plaintiff is entitled to $36,060.15.[1] After careful consideration of the briefs filed by both parties, and for the reasons discussed below, defendant's Motion to Dismiss is, hereby, GRANTED.

## FACTS

Plaintiff, Neil E. Shook, is the equity receiver of a government contractor, Focus Building Systems, Inc., an Indiana corporation, with its principal place of business in Indianapolis, Indiana. Appointed as receiver by the United States District Court for the Southern District of Indiana, Indianapolis Division, on December 20, 1984, plaintiff alleges that it was authorized by that court

---

1. Plaintiff's numbers are sometimes hard to follow. Plaintiff uses the number $46,520.00 as the claim total and also uses the number $36,060.15. Plaintiff also states that $10,459.85 represents cross-withholding on Contract No. 441, a contract on which full disbursement had already been made. If you add $10,459.85 and $36,060.15, the total $46,520.00 is achieved.

to bring this action in the United States Claims Court.

Prior to the appointment of Shook as receiver, Focus entered into five contracts with the VA. The case at bar involves four of the five VA contracts, each concerning a project at the Richard L. Roudebush Veterans Administration Medical Center (Roudebush), in Indianapolis, Indiana. The first contract, Contract No. V583C–441 (Contract 441), which concerned the relocation of the Cardiac Catheterization Laboratory at Roudebush, was entered into on June 21, 1983, for a contract price of $109,234.00. Contract No. V583C–448 (Contract 448) involved the expansion of the Nuclear Medicine Unit at Roudebush, and was entered into on August 18, 1983, for $149,848.00. On September 27, 1983, defendant and Focus entered into Contract No. V583C–451 (Contract 451), for renovation of the medical center's Nursing Health Care Unit at a price of $296,899.00. The final contract at issue, Contract No. V583C–454 (Contract 454), was executed on October 19, 1983, for $119,933.00, and required preparation for Automatic Data Processing Operations at Roudebush.

Each of the four contracts contained the same standard Disputes clause in the General Provisions section of the contract. Contract 441 and Contract 448 contained identical clauses governing (1) Disputes Concerning Labor Standards and (2) Withholding of Funds. Contracts 451 and 454 contained similar, albeit not identical clauses to those in Contracts 441 and 448. In addition, the same Davis–Bacon Act, 40 U.S.C.App. § 276a to 276a–5, and Contract Work Hours and Safety Standards Act (CWHSSA), 40 U.S.C. §§ 327–333, clauses were included in the Labor Standards Provisions section of each of the contracts.

By letter dated May 15, 1984, the Department of Labor (DOL) notified VA contracting officer, Carlene S. Yeakle, that Focus and its subcontractor on Contracts 448, 451 and 454, Polk & Sons Electric Contractors, Inc. (Polk), had violated the Davis–Bacon Act and the Contract Work Hours and Safety Standards Act. The DOL stated that, because the investigations had just commenced at the time of the letter, no further information was available.

Pursuant to the DOL findings, the VA contracting officer, Yeakle, advised Focus, by letter dated May 21, 1984, that, pursuant to the Labor Standards Provisions of the contracts, withholdings would be made from Contracts 448, 451 and 454. Yeakle informed Focus that because she had been "advised by the Department of Labor that violations of the Davis–Bacon Act and the Contract Work Hours and Safety Standards Act exist[ed]," she would continue to withhold ten percent of the total requested payment each month, until the DOL notified her that all wage violations had ceased, and that all employees had been paid their back wages. The contracting officer's letter concluded with the statement: "Should it appear, as the investigation continues, that additional retainage is needed to cover such wages, I will notify you in advance of the withholding action."

By letter dated June 27, 1984, Yeakle provided Focus with such advance notification. Yeakle stated:

On May 21, 1984, I advised you by letter that I would begin to withhold 10% on the following three contracts to cover Davis Bacon Act and Safety Standards Act violations.

Contract No. V583C–448, "Expand Nuclear Medicine"

Contract No. V583C–451, "Renovate N.H.C.U."

Contract No. V583C–454, "Prepare for ADP Operations"

At the time of the letter the amount of back wages due employees were not known. I have recently been informed by the Department of Labor that there is a considerable amount owed by Polk and Sons Electric and the ten percent figure will not be sufficient retainage to insure payment of these wages to the employees.

I therefore will begin to withhold the back wage amounts furnished me by the Department of Labor on the above three

contracts with the exception of Contract No. V583C–451, "Renovate N.H.C.U." I will continue to withhold 10% retainage on this contract until further information is furnished this office.

On July 18, 1984, Yeakle sent a formal cure notice to Focus regarding Contract 451, which provided the contractor with ten days to correct mechanical items which were delaying contract completion. Yeakle warned Focus that its failure to comply with the cure notice could result in termination of the contract, pursuant to the "Termination for Default" clause of the contract.

By letter dated October 22, 1984, Yeakle notified Focus that the DOL had requested withholdings from Contracts 441, 448 and 454, pending completion of investigations of Polk for Davis–Bacon Act violations. Up to that point in time, Davis–Bacon Act violations under Contract 441 totaled $12,430.12. However, because the government had already paid Focus the entire amount due on Contract 441, the DOL proposed that the $12,430.12 amount due should be cross-withheld from Contract 451. Violations under Contract 448 totaled $13,790.63, of which amount $10,282.07 were available, and were to be withheld from Contract 448, with the remaining $3,508.56 to be cross-withheld from Contract 451. Davis–Bacon Act violations totaled $3,826.37 under Contract 454, and this amount was to be withheld from the $11,500.00, still available under Contract 454.

Meanwhile, representatives of the VA met with representatives of Focus in an effort to obtain completion of Contract 451. The attempt was unsuccessful, however, and Contract 451 was terminated for default by letter dated November 8, 1984. The major reasons for the default termination were (1) lack of continued payments to contractors and suppliers, which resulted in non-performance, and (2) non-payment to the contractor's employees, which resulted in the worker's refusal to report for work for several days. In the letter Focus was notified that:

[t]his notice of termination constitutes a final decision on this matter. This decision may be appealed to the Veterans Administration Board of Contracts Appeals (VABCA), Union Center Plaza, Room 6301, 941 N. Capital Street, N.E., Washington, D.C. 20421. If you decide to make such an appeal, you must mail or otherwise furnish written notice thereof to the VABCA within 90 days from the date you receive this decision.... For appeals under the Disputes clause you may solely, at your election, proceed under the VABCA procedure for claims $50,000.00 or less. In lieu of appealing to the Veterans Administration Board of Contract Appeals (VABCA), you may bring an action directly in the U.S. Court of Claims within twelve (12) months of the date you received this decision.

On November 15, 1984, Schneider Electric Company (Schneider), a subcontractor on Contract 454, filed a complaint against Focus in the United States District Court for the Southern District of Indiana, Indianapolis Division. Schneider also requested appointment of a receiver for Focus, based on its allegations that: (1) Focus was insolvent, or in imminent danger of insolvency; (2) Schneider had no adequate remedy at law or in equity, and had been damaged irreparably by the actions of Focus; and (3) appointment of an ancillary equity receiver for Focus and its assets was necessary to supervise the affairs of Focus and to preserve the assets of Focus. On December 20, 1984, approximately six months after the government began its withholding actions from the contracts at issue, the District Court judge appointed Neil Shook as receiver for Focus and its property, "with the usual powers and duties of a receiver."

By separate letters dated February 25, 1985, the Department of Labor advised Focus and its subcontractor, Polk, of the DOL's investigatory findings regarding the wage violations. The findings disclosed a failure to classify employees properly, as well as a failure to pay such employees the prevailing wage rate to which they were entitled. The DOL indicated that such vio-

lations appeared to constitute a disregard of obligations to employees within the meaning of section 3(a) of the Davis–Bacon Act. The letter also stated that:

> whenever, as a result of an investigation conducted by a Federal agency or the Department of Labor, the Administrator finds reasonable cause to believe that a contractor or subcontractor has committed violations of the Davis–Bacon Act which constitute a disregard of obligations to employees, he shall notify the contractor or subcontractor of the findings and afford such contractor or subcontractor an opportunity to present such reasons or considerations as to why a debarment action should not be taken under Section 3(a) of the Davis–Bacon Act.

After reviewing the investigation report, James Valin, Assistant Administrator of the DOL's Employment Standards Administration, Wage and Hour Division, found "reasonable cause" to believe that the violations by Focus and Polk of the Davis–Bacon Act constituted a disregard of their obligations to their employees under Section 3(a) of the Davis–Bacon Act. Therefore, in the February 25 letters, Valin offered both Focus and Polk the opportunity for a hearing before one of the DOL's Administrative Law Judges, for a determination of the issues raised, including the amounts of back wages due and whether the alleged violations constituted a "disregard of obligations to employees" under Section 3(a) of the Davis–Bacon Act. However, the Department of Labor received neither a request for a hearing, nor any other reply, from either Focus or Polk within the requisite 30 days. Therefore, by letter dated August 19, 1985, the DOL requested that the VA forward the withheld back wages to the General Accounting Office for disbursement.

On April 2, 1985, in an application for turnover of certain accounts and abandonment of other accounts, the receiver, Shook, applied to the United States District Court for the Southern District of Indiana, Indianapolis Division, for turnover of $74,963.41, allegedly withheld by the Veterans Administration from Contracts 448, 451, and 454. *United States of America v. Focus Building Systems, Inc.*, Cause No. IP 84–1543–C. The Department of Labor filed an objection to Shook's application on April 9, 1985, on the basis that the retainages held by the VA were necessary to satisfy the wage deficiencies of laborers and mechanics employed by Focus, in accordance with the Davis Bacon Act and CWHSSA, on government projects. In the April 9 submission, the DOL stated that "[t]he retainages which are the subject of this order are not, and have never been, the property of Focus, and therefore, are not subject to the jurisdiction of this court." The Department of Labor also stated that the District Court lacked jurisdiction to adjudicate the dispute.

After submission of briefs on the question of jurisdiction, the United States District Court for the Southern District of Indiana, held that it lacked jurisdiction and dismissed the receiver's application for the turnover of the contract proceeds. The district court concluded that the receiver's claim to the withheld funds "was through Focus," that Focus's claim should be based upon the construction contract entered into between Focus and the Veterans Administration, and that the receiver's application should be brought under the Tucker Act, 28 U.S.C. § 1491 (1982), in the United States Claims Court.

Shortly after the district court dismissed Focus' claim against the Department of Labor, the Department of Labor advised the Veterans Administration, by letter dated January 7, 1986, of the specific amounts to be withheld from each of the contracts and the amount due each employee of Focus on the four contracts. Specifically, the Department of Labor's January 7, 1986 letter to the VA listed the back-wages owed by Focus on each contract as follows:

| contract | | DBA | Liquidated damages | CWHSSA |
|---|---|---|---|---|
| contract | 441 | $ 4,840.56 | $30 | $ 62.84 |
| | 448 | $ 6,732.36 | $40 | $ 36.56 |
| | 451 | $45,207.22 | $ 0 | $ 0.00 |
| | 454 | $ 5,919.44 | $10 | $ 7.89 |
| total: | | $62,699.58 | $80 | $107.29 |

In addition, by letter dated January 30, 1986, Carlene Yeakle, the VA contracting officer, again advised Focus of the Department of Labor's request for withholdings on contracts 451, 448 and 454. A total of $60,570.47 was to be withheld from Contract 451, $11,775.01 from Contract 448, and $16,967.17 from Contract 454. Yeakle's letter again stated that "[c]ross-withholding as authorized by Sections 5.5(a)(2) and 5.5(b)(3) of 29 C.F.R. Part 5," should be withheld to satisfy payment of the violations.

The plaintiff Shook, as receiver for Focus Systems Building, Inc., filed a complaint in the United States Claims Court initiating the instant lawsuit. An amended complaint was subsequently filed, followed by the filing of a second amended complaint. Subsequent to Shook's filing a complaint in this court, on June 3, 1986, the DOL formally advised Focus of the back wages due its employees on the five contracts.[2] Once again, the DOL offered Focus a hearing regarding the back wages due its employees on the contracts at issue and warned that failure to respond within the time specified would constitute a final action by the DOL on the matter. Focus was also advised that the violations constituted grounds for debarment under the Davis–Bacon Act.

This time, counsel for the plaintiff responded to the letter within the 30 day period, on June 23, 1986, with the following statement:

After receiving your letter we have sample checked the Focus labor records. As a result of this review on behalf of the receiver we hereby stipulate and agree to the violations asserted by the Department of Labor and we agree to an entry of a debarment order and to a determination of the back wages in accordance with the figures used in your letter. However, a stay should be exercised in regard to the sum of $36,060.15, plus appropriate interest thereon from December 20, 1984, since that portion of the retainages are in contention before the United States Claims Court.

## DISCUSSION

■ Defendant submitted a Motion to Dismiss for lack of subject matter jurisdiction, and in the alternative, a Motion for Summary Judgment. The premise of defendant's motion to dismiss is that the court lacks jurisdiction to hear this case, and that this case can be resolved appropriately by confining the instant opinion to the jurisdictional issues raised. This court agrees. When a court dismisses a case on the basis of lack of subject matter jurisdiction, it should not also adjudicate the merits of the case. *See Mark Smith Constr. Co., Inc. v. United States,* 10 Cl.Ct. 540 (1986), *later proceeding Mark Smith Constr. Co. v. United States,* 15 Cl.Ct. 32 (1988).

■ A motion to dismiss, based on a challenge to the jurisdiction of the court, requires that the court reach its decision based on the evidence presented by the parties. The Supreme Court has clearly articulated, and the United States Court of Appeals for the Federal Circuit has explicitly adopted, the general standard for weighing evidence presented in a complaint on a motion to dismiss as follows: "in passing

---

**2.** Withholdings regarding the fifth contract with the VA, to remodel a building at another VA facility in Marion, Indiana, were not a part of this litigation.

on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989). The court must accept as true any undisputed allegations of fact made by the plaintiff. *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686. If a motion to dismiss for lack of subject matter jurisdiction challenges the truth of the jurisdictional facts alleged in the complaint, the trial court may also consider relevant evidence in order to resolve disputed facts. When facts relevant to the issue of jurisdiction are disputed, the court is required to decide those facts. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988).

■ The burden is on the plaintiff to establish jurisdiction. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Metzger, Shadyac & Schwartz v. United States*, 10 Cl.Ct. 107, 109 (1986). In the case at bar, plaintiff has failed to meet that burden.

■ Plaintiff has attempted in its complaint to assert jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (1982), "by reason of plaintiff's claim being upon a contract with the United States by a Contractor, under 41 U.S.C. Sec. 609 and 28 U.S.C. Sec. 1491." Congress has defined the jurisdiction of the Claims Court under the Tucker Act to include those claims "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act itself, however, does not create a substantive right of recovery against the United States. As stated by the Supreme Court: "The Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States

for money damages." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). A claimant "must look beyond the Tucker Act to discover and plead a money mandating predicate upon which to complete jurisdiction." *Westech Corp. v. United States*, 20 Cl.Ct. 745, 748 (1990) (citations omitted). In other words:

[T]he prospective claimant must invoke substantive rights grounded expressly or by implication in a contract, an act of Congress or a regulation of an executive department. *See United States v. Mitchell*, 463 U.S. 206, 217 & n. 16, 103 S.Ct. 2961, 2968 & n. 16, 77 L.Ed.2d 580 (1983); *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 605, 607, 372 F.2d 1002, 1007, 1009 (1967).

*United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

■ From the facts presented, it is clear that neither the plaintiff, Shook, nor the contractor, Focus, challenged the critical decisions of the DOL or of the VA contracting officer at the time those decisions were made. Moreover, the appointment of plaintiff, Shook, as the receiver, did not invoke the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362 (1982), to cure the failure of Shook and of Focus to contest the adverse Executive Branch determinations. Plaintiff's case is jurisdictionally defective due to the failure by the contractor and the plaintiff to properly contest the decision by the DOL that the contractor and its subordinates had not properly paid employees, and, especially, to contest the decision by the contracting officer to withhold monies at the direction of the DOL. Plaintiff has failed to exhaust DOL administrative remedies. Plaintiff has also failed to meet the requirements of the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601–613, by not submitting a claim to the contracting officer. Plaintiff's lawsuit, therefore, should be dismissed.

It is undisputed that each of the contracts at issue in the case at bar contained the same standard Disputes clause in the

General Provisions section, which states, as follows:

### 6. DISPUTES

(a) This contract is subject to the Contract Disputes Act of 1978 (41 U.S.C. 601, *et. seq.*). If a dispute arises relating to the contract, the contractor may submit a claim to the Contracting Officer who shall issue a written decision on the dispute in the manner specified in DAR–1–314 (FAR 1–1.318).

(b) "Claim" means

(1) a written request submitted to the Contracting Officer;

(2) for payment of money, adjustment of contract terms or other relief;

(3) which is in dispute or remains unresolved after a reasonable time for its review and disposition by the Government; and

(4) for which a Contracting Officer's decision is demanded.

All four of the contracts included the Davis–Bacon Act (40 U.S.C.App. § 276a to 276a–5), the Contract Work Hours and Safety Standards Act (CWHSSA) (40 U.S.C.App. §§ 327–333), and the Withholding of Funds clauses, within a section of the contracts titled "Labor Standards Provisions." The terms of the clauses on Disputes Concerning Labor Standards and the Withholding of Funds, however, varied slightly.

Contract 441 and Contract 448 contained the following Disputes Concerning Labor Standards clause:

### 9. DISPUTES CONCERNING LABOR STANDARDS

Disputes arising out of the labor standards provisions of this contract shall be subject to the Disputes clause except to the extent such disputes involve the meaning of classifications or wage rates contained in the wage determination decisions of the Secretary of Labor or the applicability of the labor provisions of this contract which questions shall be referred to the Secretary of Labor in accordance with the procedures of the Department of Labor.

Contract 451 and Contract 454 contained a different Disputes Concerning Labor Standards clause:

### 9. DISPUTES CONCERNING LABOR STANDARDS

Disputes arising out of the labor standards provisions of this contract shall not be subject to the general disputes clause of this contract. Such disputes shall be resolved in accordance with the procedures of the Department of Labor set forth in 29 CFR Parts 5, 6, and 7. Disputes within the meaning of this clause include disputes between the Contractor (or any of its subcontractors) and the contracting agency, the U.S. Department of Labor, or the employees or their representatives.

Contract 441 and Contract 448 also contained the following clause concerning the withholding of funds:

### 6. WITHHOLDING OF FUNDS

(a) The Contracting Officer may withhold or cause to be withheld from the Government Prime Contractor so much of the accrued payments or advances as may be considered necessary (1) to pay laborers and mechanics, including apprentices, trainees, watchmen, and guards employed by the Contractor or any subcontractor on the work the full amount of wages required by the contract, and (2) to satisfy any liability of the Contractor and any subcontractor for liquidated damages under paragraph (b) of the clause entitled "Contract Work Hours and Safety Standards Act—Overtime Compensation."

(b) If the Contractor or any subcontractor fails to pay any laborer, mechanic, apprentice, trainee, watchman, or guard employed or working on the site of work, all or part of the wages required by the contract, the Contracting Officer may after written notice to the Government Prime Contractor, take such action as may be necessary to cause suspension of any further payments or advances until such violations have ceased.

Contract 451 and Contract 454 contained a different clause concerning the withholding of funds:

## 6. WITHHOLDING

The Contracting Officer shall upon his/her own action or upon written request of an authorized representative of the Department of Labor withhold or cause to be withheld from the Contractor under this contract or any other Federal contract with the same Prime Contractor, or any other Federally-assisted contract subject to Davis–Bacon prevailing wage requirements which is held by the same Prime Contractor, so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics, including apprentices, trainees, and helpers employed by the contractor or any subcontractor the full amount of wages required by the contract. In the event of failure to pay any laborer or mechanic, including any apprentice, trainee or helper, employed or working on the site of the work (or under the United States Housing Act of 1937 or under the Housing Act of 1949 in the construction or development of the project), all or part of the wages required by the contract, the Contracting Officer may, after written notice to the Prime Contractor, sponsor, applicant, or owner, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds until such violations have ceased.

At first blush, it would appear that pursuant to the two similar, albeit different, versions of the "Disputes Concerning Labor Standards clauses" included in the four contracts, resolution of the Davis–Bacon and CWHSSA disputes under the contracts at issue might fall outside the purview of the CDA. Examining the language of both Disputes Concerning Labor clauses, the words might seem to subject resolution of disputes regarding labor issues to procedures other than those contemplated by the CDA. Assuming, arguendo, in the case at bar, that the CDA disputes procedures are deemed inapplicable, the parties would have to resolve any labor disputes in accordance with applicable agency, in this case DOL, procedures. It is clear, however, that, in the case at bar, neither plaintiff nor Focus Building Systems, Inc.,[3] has submitted any written claim regarding the determination of the labor wage rates or the withholding of funds to the appropriate DOL official for a final agency decision. The only petition submitted to contest the withholding of the assets was included in the lawsuit filed in the United States District Court for the Southern District of Indiana. In short, under DOL procedures, the plaintiff has failed to exhaust its available administrative remedies. Moreover, as is discussed below, if the CDA is held applicable to the issues at bar, the contractor, Focus and this plaintiff have also failed to properly follow required procedures under the CDA. In either instance, this plaintiff's lawsuit would have to be dismissed.

Focus and its subcontractor Polk & Sons Electric Contractors, Inc. (Polk), declined

---

**3.** Plaintiff was appointed an equity receiver of Focus and "all its property of every kind, with the usual powers and duties of a receiver," on December 20, 1984, by the District Court for the Southern District of Indiana, Indianapolis Division. The right of a receiver to sue in this court was recognized in *Redfield v. United States,* 27 Ct.Cl. 393, 399 (1892), as long as the receiver had been appointed receiver of all the assets of the original contractor/claimant, and not simply of a portion of those assets sufficient only to satisfy an individual creditor's claims to the exclusion of other creditors' claims. *See Patterson v. United States,* 173 Ct.Cl. 819, 824, 354 F.2d 327, 330 (1965) (citing to *George Howes & Co.,* 24 Ct.Cl. 170 (1889)). It is clear in the language used by the district court in appointing Shook as receiver that its receivership was not partial, but complete. Precedent upholds the right of such a "general," court appointed receiver to bring suit here, and imposes an obligation upon the United States to deal with and recognize that receiver. *See Borcherling v. United States,* 35 Ct.Cl. 311 (1900), *aff'd,* 185 U.S. 223, 22 S.Ct. 607, 46 L.Ed. 884 (1902). However, the right to bring suit does not permit the receiver to evade the jurisdictional requirements of this court. Indeed, "[a] receiver holds the property coming into his hands by the same right and title as does the persons for whose property he is receiver, subject to liens, priorities, equities, privileges, claims, defenses and estoppels existing at the time of his appointment." 65 Am.Jur.2d Receivers § 165. In short, "the receiver stands in the shoes of the corporation or person whose property is in receivership, with exactly the same rights and obligations with respect to such property as such person had at the inception of the receivership." 65 Am.Jur.2d, Receivers, para. 165 (citing *Marshall v. New York,* 254 U.S. 380, 385, 41 S.Ct. 143, 145, 65 L.Ed. 315 (1920)).

repeated invitations by the Department of Labor for a hearing regarding its withholdings of back wages and its alleged disregard of obligations to employees. Thus, the matter was not "resolved in accordance with the procedures of the Department of Labor set forth in 29 C.F.R. Parts 5, 6 and 7," as possibly required by the language of the Disputes Concerning Labor Standards clause included in Contracts 451 and 454, which is broader in its admonition that the general Disputes clause shall not apply in labor derived disputes than the Disputes Concerning Labor Standards clause included in Contracts 441 and 448.

After Shook was appointed receiver, by separate letters dated February 25, 1985, the Department of Labor informed both Focus and Polk that their violations of Section 3(a) of the Davis–Bacon Act[4] constituted a disregard of their obligations to their employees, and provided them with the opportunity for a hearing to contest the above allegation and/or the calculated amount of back wages owed by both Focus and Polk. Again, the court notes, neither Focus, nor Polk, nor Shook availed themselves of the opportunities to appeal the DOL decisions.

In fact, from the record presented, it appears that plaintiff's only inquiry of any kind regarding the DOL's decisions was acknowledged in a letter from John H. Secaras, Regional Solicitor for the DOL, in a letter to Shook's counsel, dated March 19, 1985. That letter seems to acknowledge an inquiry from Shook: "... you have asked this office to set forth its [DOL's] authority for the proposition that funds retained by the Government on Focus' contracts with the Veterans Administration (V.A.) are not the property of Focus (or of the receiver) to the extent such funds are owed employees for work performed on said contracts. You have also asked to be apprised of the

procedure for withholding funds and litigating violations under the Davis–Bacon Act and CWHSSA." However, the record before the court does not contain Shook's actual request.

The March 19, 1985, responsive letter from the DOL's Regional Solicitor appears aimed at responding to an inquiry from plaintiff as to why the DOL believed the contested funds were not the property of Focus or Shook. The DOL letter, however, does not constitute acknowledgment of the submission of a proper claim for an appeal within the DOL, or for that matter, a proper claim to the VA contracting officer. Moreover, the record does not reflect that the DOL or the VA ever received such a claim. In fact, in an interagency communication from the Department of Labor Employment Standards Administrative Wage and Hour Division to the Office of Procurement and Supply at the VA, the DOL wrote: "To date, however, no request for a hearing has been received." The DOL, therefore, requested that the VA forward the back wage monies to the General Accounting Office for disbursement to the underpaid employees.

By letter dated June 3, 1986, the Department of Labor provided Focus with yet another opportunity to contest the calculation of back wages owed, which, by that date, had escalated to $69,432.12, as well as another chance to contest the DOL's allegation that the violations by Focus of Section 3(a) of the Davis–Bacon Act constituted disregard of obligations to employees. This time, counsel for the receiver, Shook, responded within the requisite thirty days, in a letter dated June 23, 1986. However, rather than accept an invitation for a hearing, Shook, through its counsel, indicated that:

---

**4.** According to DOL, Focus failed to classify its employees properly, failed to pay them the prevailing wage rate to which they were entitled, failed to provide them with fringe benefits to which they were entitled and owed $26,505.78 in back wages. Section 3(a) of the Davis–Bacon Act authorizes and directs the Comptroller General of the United States to distribute a list to all Departments of the Government, giving the

names of persons or firms found to have disregarded their obligations to employees under this Act. No contract or subcontract shall be awarded to such persons or firms, or to any firm, partnership, or association in which such persons or firms have an interest until three years have elapsed from the date of publication of the list containing the names of such persons or firms.

we hereby stipulate and agree to the violations asserted by the Department of Labor and we agree to an entry of a debarment order and to a determination of the back wages in accordance with the figures used in your letter. However, a stay should be exercised in regard to the sum of $36,060.15,[5] plus appropriate interest thereon from December 20, 1984, since that portion of the retainages are in contention before the United States Claims Court.

Plaintiff maintains that because the letters sent to Focus and Polk subsequent to Shook's appointment as receiver were not addressed to the Shook, plaintiff "believes" that the letters did not come into Shook's possession until discovery commenced in the instant lawsuit. Plaintiff further contends that "[e]ven so, these notices did not, nor lawfully could not, cover the question of whether the funds were in the VA hands lawfully." The court notes, however, that Shook's counsel was in direct correspondence with the DOL at least as early as the March 19, 1985 letter mailed to it by the DOL Regional Solicitor, referred to above. But, even if the above statements are deemed true, neither of plaintiff's attempted excuses relieve plaintiff from the responsibility of satisfying the jurisdictional prerequisites of this court by first exhausting the DOL administrative remedies or properly presenting the claims to the contracting officer in accordance with the CDA. In fact, Shook consented to the findings by the DOL, although it unartfully attempted to state that the United States Claims Court proceeding in some way entitled it to preserve its right to the $36,060.15, despite its concession to the DOL findings.

It appears that plaintiff elected to forego the options presented by the DOL, and submitted its claim in the first instance as part of the Claims Court litigation. In fact, plaintiff "stipulated and agreed to the violations asserted" by the DOL; agreed to the entry of a debarment order; agreed to a determination of the back wages owed in accordance with the figures used in the DOL's letter dated June 3, 1986, and stated only that "a stay should be exercised in regard to the sum of $36,060.15, plus appropriate interest thereon from December 20, 1984, since that portion of the retainages are in contention before the United States Claims Court." Shook never presented its claim to DOL officials, other than to announce to the DOL that its claim already was pending in this court.

If, however, plaintiff's approach, albeit not clearly articulated in its complaint and filings before this court, really was to challenge, not the DOL Wage Rate or CWHSSA determinations, but rather to challenge the action by the VA contracting officer of withholding the monies pursuant to direction from the DOL, then, the case should be evaluated pursuant to the standard Disputes clause and, therefore, pursuant to the CDA. The CDA, which applies to all contracts entered into on or after March 1, 1979, allows a contractor to appeal an adverse final decision to the appropriate board of contract appeals under 41 U.S.C. § 606, or to seek relief from the contracting officer's decision directly in the United States Claims Court under 41 U.S.C. § 609(a). *Tuttle/White Constructors, Inc. v. United States*, 228 Ct.Cl. 354, 357, 656 F.2d 644, 646 (1981). It is apparent from the record, as presented, however, that plaintiff has not availed itself of the opportunity to file a claim with the VA contracting officer, prior to pursuing the claim before either the Veterans Administration Board of Contract Appeals (VABCA), or on direct appeal to the United States Claims Court.

The CDA requires all government contractors seeking redress to submit and, if appropriate, to certify, a written "claim" to the contracting officer and to request a final decision under 41 U.S.C. § 605. The CDA's requirements are mandatory and are jurisdictional prerequisites. *Dawco Constr., Inc. v. United States*, 930 F.2d 872, 877 (Fed.Cir.1991) (citing 41 U.S.C.

---

**5.** This time, plaintiff's number of the dollars withheld did not include the $10,459.85 cross-

withholding on Contract 441.

§ 605 (1988)); *W.M. Schlosser Co. v. United States*, 705 F.2d 1336, 1338–39 (Fed.Cir. 1983). The term "claim" is not defined precisely in the CDA. Thus, "a contested claim's sufficiency may properly be evaluated against regulations implementing the CDA, the language of the contract in dispute, and the facts of the case." *Dawco*, 930 F.2d at 877 (citing *Gardner Mach. Corp. v. United States*, 14 Cl.Ct. 286, 290 (1988)).

The Federal Acquisition Regulations (FAR), which implement the CDA, define "claim" as:

> a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.... A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim. The submission may be converted into a claim, by written notice to the contracting officer as provided in [48 C.F.R. §] 33.206(a), if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

48 C.F.R. § 33.201 (1990). Section 33.-206(a) provides that:

> [c]ontractor claims shall be submitted in writing to the contracting officer for a decision. The contracting officer shall document the contract file with evidence of the date of receipt of any submission from the contractor deemed to be a claim by the contracting officer.

48 C.F.R. § 33.206(a) (1990).

The requirements for "submission" of a claim are intentionally broad. *See, e.g., Dawco*, 930 F.2d at 880 (stating that "Congress deliberately left the language concerning submission to the contracting officer 'broad ... to permit appropriate Government officers to receive written claims and forward them to the [contracting officer].' ") (quoting *American Pac. Roofing Co. v. United States*, 21 Cl.Ct. 265, 268 (1990)). The CDA does not govern how the letter asserting the claim is to be addressed, nor does it identify to whom the

letter first must be given. *Dawco*, 930 F.2d at 880. Rather, it "simply identifies to whom the dispute is to be 'submitted' for final decision." *Id.* Section 605 of the CDA does not require that the claims be sent only to the contracting officer, or that they be sent directly to the contracting officer. *Neal & Co. v. United States*, 945 F.2d 385, 388 (Fed.Cir.1991). For example, if the contractor sends a proper claim to its primary contact "with request for a final decision of the contracting officer and a reasonable expectation that such a request will be honored, and the primary contact in fact timely delivers the claim to the contracting officer," then there is "no basis for finding that the claim was not submitted to the contracting officer as required under § 605(a)." *Id.* at 388–89. Clearly, "the purpose of the [CDA's] 'submit' language is not related to the minutia of addressing or delivering claim letters, ... but is merely a requirement that once a claim is made, the parties must 'commit' the claim to the contracting officer and 'yield' to his authority to make a final decision." *Dawco*, 930 F.2d at 880. All that is required is that "the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and the amount of the claim." *Contract Cleaning & Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987).

In its brief, plaintiff argues, without citing any support in the record, that it did indeed present its claim to the VA contracting officer, but that "neither the VA nor the DOL treated the matter as a contract dispute after written claim was made by the receiver...."

Plaintiff, in its Cross–Motion for Summary Judgment expressly states: "[p]laintiff adopts the defendant's statement of facts, with the following additions...." None of plaintiff's additions addressed the issue of whether plaintiff had presented a claim to the contracting officer for final decision. Moreover, nowhere in defendant's statement of facts is there any indication that plaintiff submitted a claim to the contracting officer for final decision.

From the record, it appears that the only "written claim" made by the receiver was included in the language of Shook's application to the United States District Court for the Southern District of Indiana, Indianapolis Division, in the form of an "Application for Turn Over of Certain Accounts and for Abandonment of Other Accounts." A lawsuit filed in federal district court, however, is not the equivalent of a written claim submitted to a contracting officer, or a DOL official. Nor is it a "claim" within the meaning of the "Disputes" clauses found in the General Provisions section of the contracts at issue.

There is no evidence in the documents submitted to this court, by either party, of a receipt of any submission which could constitute a claim from the contractor or receiver to the contracting officer, despite specific invitations from the contracting officer to do so. One such invitation came by letter, dated November 8, 1984, in which the contracting officer, Carlene Yeakle, informed Focus that Contract 451 had been terminated for default. Yeakle advised Focus that it could appeal her final decision to the Veterans Administration Board of Contract Appeals (VABCA) within 90 days, or could instead bring an action directly in the United States Claims Court within 12 months of receipt of the decision. Focus elected not to pursue either option.

Exceptions to the requirement that all claims by a contractor against the government be submitted to the agency contracting officer for final decision are included in 41 U.S.C. § 605(a), which provides: "The authority of this subsection shall not extend to a claim or dispute for penalties or forfeitures prescribed by statute or regulation which another Federal agency is specifically authorized to administer, settle or determine." 41 U.S.C. § 605(a). Plaintiff has failed to cite any authority, nor can this court find any authority which stands for the proposition that plaintiff's claim fits within the above exception included in § 605(a) of the CDA.[6]

While the Secretary of Labor does have the responsibility for administration and consistent enforcement of the labor standards provisions of the Davis–Bacon Act, his responsibility is not all-inclusive. Certain activities regarding enforcement of the labor standards provisions necessarily remain with the contracting Federal agency.[7] In the instant case, the duty to enforce the Davis–Bacon Act violations by withholding monies due under the contract performance remains with the contracting agency, in this case, the VA. Therefore, the act of withholding monies under a contract is an act undertaken, in this instance, by the VA contracting officer, and appealable under the CDA. It should not be viewed as a

**6.** There is scant judicial interpretation of the "penalties and forfeitures" clause of 41 U.S.C. § 605(a). The United States Court of Appeals for the Federal Circuit recently discussed the clause in *Martin J. Simko Constr., Inc. v. United States*, 852 F.2d 540, 545–48 (Fed.Cir.1988). In reversing a decision of the Claims Court, the United States Court of Appeals for the Federal Circuit held that the Government's counterclaims, pursuant to the antifraud provision of the CDA and the Government's special plea in fraud, did not have to be the subject of a contracting officer's final decision in order to invoke Claims Court jurisdiction, but did not elaborate on the "penalties and forfeiture" portion of the clause. *Id.*

**7.** Reorg.Plan No. 14 of 1950, 15 Fed.Reg. 3176 (1950), 64 Stat. 1267, *reprinted in* 5 U.S.C.App. (1976). President Truman, when signing the Reorganization Plan, No. 14 of 1950, on Labor Standards Enforcement, stated that:

The methods adopted by the various agencies for the enforcement of labor standards vary widely in character and effectiveness. As a result, uniformity of enforcement is lacking and the degree of protection afforded workers varies from agency to agency.

In order to correct this situation, this plan authorizes the Secretary of Labor to coordinate the administration of legislation relating to wages and hours on federally financed or assisted projects by prescribing standards, regulations, and procedures to govern the enforcement activities of the various Federal agencies and by making such investigations as he deems desirable to assure consistent enforcement. The actual performance of enforcement activities, normally including the investigations of complaints of violations, will remain the duty of the respective agencies awarding the contracts or providing the Federal assistance.

Reorg. Plan No. 14 of 1950, *reprinted in* 5 U.S.C.App. at 1261–62 (1988).

"penalty or forfeiture," to be administered by the DOL.

In *Mark Smith Construction Co. v. United States,* 10 Cl.Ct. 540 (1986), this court considered a jurisdictional question similar to the one present in the case at bar. In *Mark Smith Construction Co.,* the contractor sought direct review, pursuant to 41 U.S.C. § 605(a), by the Claims Court of a decision by the Bureau of Prisons and the DOL to withhold contract funds in accordance with the provisions of the Davis–Bacon Act. The contract at issue included the same Labor Standards Disputes provision found in Contract 441 and Contract 448. As in the case at bar, the plaintiff in *Mark Smith Construction Co.* had not submitted its claim to the contracting officer prior to bringing suit in the Claims Court. The court in *Mark Smith Construction Co.* indicated that:

> [w]here a contractor or subcontractor fails to pay wages prescribed by the Secretary of Labor pursuant to the Act, the contracting officer is given authority to withhold construction payments in an amount equal to the deficiency in wages; ... 29 C.F.R. §§ 5.5(a)(2), and (c)(3); ... The money is then distributed to the affected workers. 40 U.S.C. § 276a–2.

*Mark Smith Constr. Co. v. United States,* 10 Cl.Ct. at 547.

The court concluded that the nature of the claim in *Mark Smith Construction Co. v. United States* was not of the type to come within the Disputes Concerning Labor Standards clause included in the contract. Furthermore, the court concluded that by its terms, the "Disputes Concerning Labor Standards" clause in that case (like the one in Contracts 441 and 448),

does not mandate that *all* 'Disputes Concerning Labor Standards' be first submitted to the Secretary of Labor, nor does the Davis–Bacon Act, from which this clause derives. *See* 40 U.S.C. § 276a. According to clause 9 [the Disputes Concerning Labor Standards clause], only two categories of claims are within the Secretary's jurisdiction: (1) those concerning 'the meaning of classifications or wage rates' contained in the DOL's wage

determination, and (2) those concerning 'the applicability of the labor provisions' of the contract ... (emphasis in original). *Mark Smith Constr. Co. v. United States,* 10 Cl.Ct. at 548.

Moreover, the *Mark Smith Construction Co.* court found significant that the plaintiff contested only the enforcement actions by the contracting officer to withhold the funds, not the determinations by the Labor Department of the wage rate determinations or wage deficiency. Therefore, the *Mark Smith Construction Co.* court wrote:

> In the case at bar, we do not read the plaintiff's grievance ... to be with the Secretary of Labor, nor with any determination by him. Rather, [plaintiff's claim] is directed at the contracting officer's action withholding funds from plaintiff for the wage practices of its subcontractor under clause 6 of the contract.... Nowhere in plaintiff's complaint does plaintiff contest the substantive finding of a wage deficiency against the subcontractor, nor the Secretary's wage rate determinations, nor the applicability of Davis–Bacon to its contract, its subcontractor's contract, or any of the employees of either. In essence, the complaint here is between the plaintiff and the contracting officer relative to enforcement of a contractual provision, *i.e.,* clause 6. It is simply not a matter involving the Secretary of Labor, and therefore does not arise under the ["Disputes Concerning Labor Standards" clause].

*Mark Smith Constr. Co. v. United States,* 10 Cl.Ct. at 548.

Similarly, in the case at bar, plaintiff stipulated and agreed to the violations asserted by the DOL, agreed to an entry of a debarment order, and agreed to a determination of back wages in accordance with the figures proposed by the DOL. Shook contested only the withholding of funds by the VA contracting officer. Therefore, the holding in *Mark Smith Construction Co.* is didactic regarding defective jurisdiction in the case at bar, inasmuch as the plaintiff currently before the court also has not

complied with the applicable provisions of the CDA.

In the case at bar, since all of the labor violations, the wage rate determinations and CWHSSA findings, and the amounts assessed for those violations were conceded by plaintiff, what is presently at issue is the withholding of those monies by the VA contracting officer. It would appear, therefore, that the dispute as to the propriety of the VA contracting officer's decision to withhold the monies is subject to challenge under the CDA, and this plaintiff has failed to follow the jurisdictional prerequisites of the CDA.

■ To the extent that plaintiff's claim is one for liquidated damages under the Contract Work Hours and Safety Standards Act (CWHSSA), there is no evidence or even allegation in the record that plaintiff has exercised any of its administrative remedies to contest an assessment of such liquidated damages. In fact, in the case at bar, plaintiff stipulated, by letter dated June 23, 1986, to the determinations of liquidated damages included in the DOL's June 3, 1986 letter to Shook. Therefore, like plaintiff's Davis–Bacon Act withholding claim, a claim for liquidated damages under the CWHSSA, in the amount of $80.00, is not properly before this court. Sections of 28 U.S.C. § 1499 (1982) [8] and 40 U.S.C.App. § 330 (1982) govern the review of the Claims Court over liquidated damages claims against the government. Section 330 provides, in pertinent part:

> In all such cases in which a contractor or subcontractor may be aggrieved by a final order for the withholding of liquidated damages as hereinbefore provided, such contractor or subcontractor may, within sixty days after such final order, file a claim in the United States Claims Court: *Provided, however,* That final orders of the agency head ... shall be conclusive with respect to findings of

fact if such findings are supported by substantial evidence.

40 U.S.C.App. § 330(c) (1988) (emphasis in original).

In every possible regard, and under any possible theory of law by which this plaintiff might seek relief, plaintiff simply has chosen not to pursue the mandatory administrative routes made available to the contractor. Before proceeding to the Claims Court, plaintiff must exhaust its administrative remedies. *See, e.g., Inland Service Corp. v. United States,* 231 Ct.Cl. 974, 978–79 (1982) (stating that the Claims Court generally has refused to consider evidence which could have been presented below at administrative proceedings, but were not); *Richard E. Wilson Corp. v. United States,* 4 Cl.Ct. 171, 173 (1983) (noting that "[g]enerally, this Court has refused to consider evidence and arguments which might have been presented at lower administrative proceedings, but were not, and are subsequently raised here for the first time"). The liquidated damages provisions of CWHSSA set forth specific administrative remedies, which are jurisdictional prerequisites to instituting suit in this court. Not only did plaintiff present its claim in this court more than a month before the DOL issued the findings to which Shook stipulated, but plaintiff failed to exhaust the requisite administrative remedies prior to filing in this court.

The evidence in the case at bar makes it clear that the government has the authority to make withholdings from a government contractor such as the withholdings made in the instant case. Pursuant to the withholdings provisions of all of the contracts at issue, the contracting officer is entitled, after written notice to the government contractor, to withhold "so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics, including apprentices, train-

---

**8.** Section 1499 states that, "[t]he United States Claims Court shall have jurisdiction to render judgment upon any claim for liquidated damages withheld from a contractor or subcontractor under section 104 of the Contract Work Hours Standards Act." 40 U.S.C.App. § 1499. In the "References in Text" section included

within section 1499, it is noted that the reference to the "Contract Work Hours Standards Act ... probably means section 104 of the Contract Work Hours and Safety Standards Act, as redesignated by Pub.L. No. 91–54, § 2, Aug. 9, 1969, 83 Stat. 98, which is classified to section 330 of Title 40 [of the United States Code]." *Id.*

ees [and helpers] employed by the contractor or any subcontractor" the full amount of wages required by the contract. *See also* 40 U.S.C.App. §§ 276a and 40 U.S.C.App. § 328. By stipulating to the amounts deemed necessary to cover withheld back wages, plaintiff cannot now claim that it is entitled to any money that has been designated to pay those back wages, which plaintiff acknowledged to the DOL were assessed in the proper amounts. The contractor should have proceeded contemporaneously to the wage rate and withholding determinations by taking advantage of available administrative procedures for appeal.

Equally untenable is plaintiff's assertion that the Automatic Stay Provision of the Bankruptcy Act, 11 U.S.C. § 362, is applicable in the case at bar. By its terms, the automatic stay provision applies solely to petitions filed pursuant to the Bankruptcy Code. Plaintiff has cited no authority which stands for the propositions that (1) the appointment of an equity receiver falls within the provisions of the Bankruptcy Code, or (2) that the principles of bankruptcy law should govern a case such as the instant one. In fact, the United States District Court judge, in the Order appointing the receiver, properly noted that it had discussed with the parties "the feasibility of bankruptcy as an alternative remedy," making it all the more unusual that plaintiff should now seek to equate receiverships and bankruptcy.

## CONCLUSION

For the reasons discussed above, defendant's Motion to Dismiss is, hereby, GRANTED.

IT IS SO ORDERED.